## Case No. 12,414.

SAYLES v. CHICAGO & N. W. R. CO.

[1 Biss. 468;[1] 2 Fish. Pat. Cas. 523.]

Circuit Court, N. D. Illinois. Feb., 1865.

PATENTS — ABANDONMENT — DELAYS IN PATENT OFFICE—EQUIVALENTS—NOVELTY.

1. A patentee can not be held accountable for the delays in the patent office, and the law, by its terms, provides for the perfection of imperfect and insufficient specifications, even after the patent issues.

2. The law looks with indulgence upon the delays which arise from the circumstances of parties who may make an invention, and it is only when the invention is intentionally abandoned or neglected, or the parties show, by their acts, that they have not done all that they can do, that the law declares that they shall not be protected.

[Cited in Blandy v. Griffith, Case No. 1,529; Consolidated Fruit-Jar Co. v. Wright, Id.

3,135; Goodyear Dental Vulcanite Co. v. Willis, Id. 5,603.]

[See American Hide & Leather Splitting & Dressing Mach. Co. v. American Tool & Mach. Co., Case No. 302.]

3. The doctrine of equivalents should be critically scanned where there may be a difference in relation to two machines, which, in some respects, operate by equivalent devices, and in other respects do not, to ascertain whether one has become a practical machine while the other is not.

4. When an improvement or a machine has been once made and used, it is not necessary that it should be used up to the time that another person may make a similar improvement. If it has been once used, and is a practical improvement or machine, no one else can claim to be the inventor.

This was a bill in equity, filed to restrain the defendant from infringing letters patent [No. 9,109], for "improvement in railroad car brakes," granted to Henry Tanner, assignee of Lafayette F. Thompson and Asahel G. Bachelder, July 6, 1852. The invention consisted in the employment of a lever pivoted in the center under the middle of a car body, the outer ends of which were connected by rods to windlasses at each end of the car, while the brakes were attached on opposite sides by rods to points in the same lever, intermediate between the ends and the pivot. In this way, by operating the windlass at either end, the brakes of both trucks were simultaneously applied. The claim is quoted in full in the opinion of the court. The brake used by the defendant was the one known as the Stevens Patent Brake.

S. A. Goodwin and C. M. Keller, for complainant.

Blodgett & Winston and Grant Goodrich, for defendant.

DRUMMOND, District Judge. The letters patent in this case were granted to Henry Tanner on the 6th day of July, 1852, covering what is called the "double acting car brake." It is well known that cars were originally run with four wheels, a single car brake being usually applied to them to retard or arrest the progress of the train. It became very important, when the railroad companies began to run cars with eight wheels, to have the brakes applied in such a way as to save the employment of numerous brakemen, and operate simultaneously upon all the wheels of the car, and that this should be done by an application of force at either end of the car, so that one man could act as brakeman upon two cars, instead of having three or more. It is this object which, it is alleged, was accomplished in this instance by pressing the brakes on all the eight wheels of the car simultaneously by the application of a force at either end, by means of a windlass there placed.

Although the patent was issued to Tanner, he was not himself the inventor, but this claim was set up by Bachelder & Thompson, Tanner being merely their assignee. The claim, as set forth in the specification, is this:

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

"What is claimed by us is to so combine the brakes of the two trucks with the operative windlass or their equivalents, at both ends of the cars by means of the vibrating lever A, or its equivalent or mechanism essentially, as specified, as to enable the brakeman, by operating either of the windlasses, to simultaneously apply the brakes of both trucks, or bring or force them against their respective wheels, and whether he be at the forward or rear end of the car."

The case has been argued on the part of the defendant chiefly, I may say solely, on the ground that these parties, Bachelder & Thompson, were not the original inventors of this improvement upon car brakes. It is also said that if the invention was ever made by them it was abandoned; that it was not prosecuted with that diligence which the patent laws required. For the purpose of showing want of novelty on the part of Bachelder & Thompson, the defendant relies mainly on two, or, I may say, on one improvement in car brakes called Millholland's improvement, which was, it is conceded, prior in point of time to that of Bachelder & Thompson. Some stress is also laid upon an improvement Mr. Nichols adopted in Connecticut, which, it is alleged. contained in several particulars the same principle as that of Bachelder & Thompson, and was used prior to the invention made by them. It becomes necessary therefore to ascertain when this improvement was first made by Bachelder & Thompson, and whether or not they abandoned it. The evidence in the case shows this to be the state of facts in relation to that matter: that Bachelder & Thompson, in the fall of 1846, substantially invented this method of applying the force to the car brakes, and that in June, 1847, they filed their application, with their model, and what purported to be specifications, in the patent office. They were not at all familiar with the method of obtaining a patent or with the law upon the subject, and they applied to a third party to assist them. The specifications which were filed, or what purported to be such, in the office were drawn up in a loose and very imperfect manner. The office itself was then overwhelmed with business, and applications were not taken up until long after they were filed. They, from time to time, called upon the gentleman whom they had requested to assist them, and letters were written to the patent office upon the subject, and in 1851, the application being still pending, in reply to some letters that were written, the agent of Bachelder & Thompson was told that the drawings and specifications as set forth were insufficient, and the further prosecution of an application for a patent in the case discouraged. However, upon a renewed effort on the part of Bachelder & Thompson, the officers in the patent office re-considered the subject, the specifications were rendered sufficient as was supposed, and a patent was finally issued.

It thus appears that for several years, from 1847 to 1852, this matter was thus suspended in the patent office. The first question that occurs is, whether these parties had neglected or abandoned their improvement in such a way as to make it public property, —and I think they had not. The whole testimony shows that they had not abandoned what they considered to be an improvement to which they had a right under the law. Certainly they cannot be held accountable for the delays in the patent office, and the law by its terms provides for the perfection of imperfect and insufficient specifications even after the patent issues. A question connected with this, is whether, when the application was made in June, 1847, there was substantially the improvement, the right to which was sought to be given to them by the letters patent in 1852;—and I think there was. It is true there was a change in the specifications as perfected and as originally filed, more having been claimed in the original specifications. Still, I think it is clear that they claimed in their original specifications substantially the method of combining the brake in the manner in which they set the claim forth in the last specifications upon which the patent issued. Besides, the patent law looks with indulgence upon the delays which arise from the circumstances of parties who may make an invention, and it is only when the invention is intentionally abandoned or neglected. or the parties show by their acts that they have not done all they can do, that the law declares that they shall not be protected in their invention. Therefore I find that this invention was made in the fall of 1846, claimed by application in the patent office in June, 1847, and protected in law by the issuing of letters patent in 1852. Then, were they the first inventors of this improvement in car brakes? I leave out of view all that is said in the testimony of what is called the Springfield brake. No particular stress is laid upon it in the argument of the defendant. It is not claimed or set up, I believe, in the answer.

The first question is in relation to what is termed the "Nichols brake." I do not propose to dwell at any great length upon the testimony as to the time when this brake was used. Mrs. Nichols, the wife of Mr. Nichols, (Mr. N. having died in 1850,) states in her deposition that her husband made a drawing of it in the spring of 1846. If so, of course the invention would be prior to that of Bachelder & Thompson, theirs not having been made until the fall of that year. But I think that the weight of the evidence is that the Nichols brake, was not invented until the spring of 1847, and was not applied until 1848. We have constantly to bear in mind in weighing the testimony of witnesses who speak of circumstances occurring many years ago, the liability to mistake the particular year unless they have some evidence of a documentary character or otherwise, or

some leading fact, as to which there can be no error, upon which they may rely to show the particular time.

This brake was applied upon what is termed a long baggage car. The witnesses Stockbridge and Fields state that this car was not finished until the spring of 1848. Various other witnesses differ as to the time, from Mrs. Nichols, and she differs now herself in giving her deposition from what she stated when she gave her testimony in the railroad case, tried in New York, some years ago. Besides she took an account book to Fields and inquired of him as to the time her husband put on the brake, which shows that she really had no memory as to the time. Taking all the testimony together in relation to this Nichols brake, it is clear, the weight of it is, that this invention was not made by him prior to that of Bachelder & Thompson, even conceding that the two brakes are identical, as to which I give no opinion.

The principal difficulty I have had in the case is in relation to the Millholland brake. One of the defendant's counsel has presented an argument in which he insists with much force and plausibility, that the Millholland brake contains substantially the same principle as the Bachelder & Thompson brake, and that it was carried into practical effect by its use upon the cars.

We have, if I might be permitted to go out of the proofs in this case, a striking illustration of the uncertainty of human memory as to the time when this Millholland brake was first applied. When this brake first came before the court it was insisted, and apparently proved, I believe, that the Millholland brake was invented and used in 1842. Mr. Millholland says now in his deposition that he made and used it in 1843. But when we come to apply documentary evidence to the facts which are before us, I think it appears satisfactory that the Millholland brake was not used until 1845. But still if it were then used, and if it was a practical improvement, and similar in principle to that of Bachelder & Thompson, of course it prevents the patent of Tanner from operating. There is no doubt of this, that Millholland did invent a brake which operated in certain circumstances upon the two trucks by means of what is called a drum under the car, so that by the application of force at either end of the car, the wheels—all the eight wheels—were retarded. The main questions are, whether it was a practical and successful improvement, and whether it was abandoned as a mere experiment. There never was any patent applied for or issued. It is conceded and the proof clearly shows that it was never actually applied in any instance except upon one car, and I think it is clear that it was thrown aside and abandoned by Millholland himself in 1845. And if it was not introduced until 1845, then instead of being used for eighteen months it was only used for a few months. The car upon which it was applied was used very

seldom. It is also certain it did not operate satisfactorily, and the brakemen complained that when used on the car, the windlass chains would break, or the car was liable to be thrown off. The Millholland brake was, in some respects, different from the Tanner brake. In the first place it operated by means of a drum upon which turned the chains to which the levers upon the brakes were attached. The brake of Bachelder & Thompson operated by means of a horizontal vibrating lever. The brake levers are also differently arranged. In the case of Millholland's brake the drum was rigid, the brake levers being pivoted in such a way that they did not operate with any degree of elasticity or self adjustability. In this respect it would seem as though the two brakes we.e different, but perhaps the "horizontal lever" of Bachelder & Thompson's brake may be said to be equivalent to the drum of Millholland's brake. But I think the doctrine of equivalents should be critically scanned where there may be a difference in relation to two machines which in some respects operate by equivalent devices, and in other respects do not, to ascertain whether the one has become a practical machine and the other not. For instance, in relation to the drum, the result shows that there were defects in the Millholland brake which prevented it from becoming a practical, useful brake. It was used and abandoned. The reason for that is given by a witness who says that it was in consequence of the rigidity of these various levers, or what might be called levers; that if there was any defect in the shoes in any way, so that on applying force to the windlass at either end, the power would be applied to but one of the shoes, the strain would tend to break the windlass chains, before there was sufficient pressure of the shoes upon the wheels. One of the great objects sought by Bachelder & Thompson in their improvement, was this: whether the wheels were running upon straight or curved lines, the shoes would all press simultaneously upon the wheels whenever force was applied. and by the elasticity of these various levers a defect in one of the shoes, would not prevent the contact of the others. Now I think these circumstances have great weight when we come to determine the question whether there was here an actual practical improvement in the car brake which would prevent any one else from adopting a principle that might be in that brake, and thereby perfecting the device.

I have come to the conclusion that there was not in this Millholland brake that kind of practical operating brake which would prevent any one else from obtaining a patent for a brake which would accomplish the object, which, it is clear, Millholland had in his mind, but does not seem to have carried out into practical operation by the brake which he made and applied in 1845.

I admit fully the law, as contended for by the counsel for the defendant, that when an

improvement or a machine has been once made and used, it is not necessary that it should be used up to the time that another person may make a similar improvement. If it has been once used, and is a practical improvement or machine, no one else can claim to be the inventor. But in this case I think there was not that practical improvement of the brake discovered and used by Millholland which would prevent these parties from obtaining a patent for a brake such as that which was finally set forth in their specifications. I would refer particularly to the testimony of the only expert introduced. It seems to me that he is a very clear-headed man, and his testimony sets forth with great distinctness the difference between the Millholland and Springfield brakes, and the brake of Tanner. And this difference which he refers to ought to have great weight when we come to consider whether, in point of fact, such a brake as Millholland used did really prevent any other person from obtaining a patent for a double acting brake similar, in some respects, but which would successfully arrest the progress of railroad trains. The conclusion to which I have come is that Bachelder & Thompson were the inventors of this improvement. for which letters patent were issued to Tanner; that they never abandoned it from its discovery in the fall of 1846, and that there has been nothing shown in the evidence, which, fairly considered, would deprive them or their assignee of the right to it.

No question has been made in relation to the infringement. It is denied in the answer, but it is not insisted on or pressed in the argument. Of course in deciding this case I do not in any respect change the views which I announced on a former occasion, as to the distinction between the Stevens and the Tanner brake. The only claim which the plaintiff would have in this case would be for any damage which he may have sustained in consequence of defendant having used the invention of Bachelder & Thompson. But if the brake of Stevens, or of any other person, shall include the invention of Bachelder & Thompson as a part of his brake, the plaintiff will not be prevented from claiming damages for the use of that part.

An interlocutory decree will be entered referring the case to a master, &c.

[The above decree was reopened, and defendant allowed to introduce new evidence. A decree was again rendered for complainant July, 1871, and a reference again ordered. Case No. 12,415. After the report of the master, a decree for the whole amount was ordered in December. 1873 (case unreported). On further rehearing. in September, 1875, the decree was reduced from $63,638.40 to $47,725 (case unreported). From that decree an appeal was taken to the supreme court. where the decree of the circuit court was reversed, and the cause remanded. with directions to enter a decree dismissing the bill of complaint. 97 U. S. 554.

[NOTE. For other cases involving this patent see Mowry v. Grand St. & N. R. Co., Case

No. 9,893; Sayles v. Louisville City R. Co., 9 Fed. 512; Sayles v. Oregon Central Ry Co., Case No. 12,423; Sayles v. Richmond, F. & P. R. Co., Id. 12,424; Sayles v. Dubuque & S. C. R. Co., Id. 12,417; Emigh v. Chicago, B. & Q. R. Co.. Id. 4,448; Root v. Lake Shore & M. S. R. Co., 105 U. S. 189; Hendrie v. Sayles, 98 U. S. 546.]