## DICKINSON v. SWINEHART.

(Court of Appeals of District of Columbia. Submitted January 13, 1920. Decided February 2, 1920.)

No. 1275.

1. PATENTS ⊙⇒91(1)—JUNIOR PARTY HAS BURDEN OF PROOF IN INTERFERENCE PROCEEDING.

In a patent interference proceeding, the junior party has the burden of proof.

2. PATENTS ⊙⇒90(3)—ONLY REASONABLE DILIGENCE REQUIRED BETWEEN DISCLOSURE AND FILING APPLICATION.

The diligence required of an inventor between the date of disclosing his invention and filing an application for patent need not be extraordinary, but only reasonable under all the circumstances, including the health, means, etc., of the inventor.

3. PATENTS ⊙⇒91(4)—JUNIOR PARTY IN INTERFERENCE PROCEEDING WAS DILIGENT IN FILING APPLICATION.

A junior party in a patent interference proceeding, filing his application for making a pneumatic tire fabric some 2½ years after disclosing his invention, *held* to have acted with reasonable diligence, in view of evidence showing he was absent for some time from the place at which his draftsmen were working, that he had kept in communication with them, and had frequently consulted an experienced tire constructor, etc.

Appeal from Decision of the Assistant Commissioner of Patents.

Interference proceeding in the Patent Office between James A. Swinehart and Fredrick S. Dickinson. From a decision awarding priority to the senior party, Dickinson appeals. Reversed, and priority awarded Dickinson.

J. R. Littell, of New York City, and J. C. Dowell, of Washington, D. C., for appellant.

SMYTH, Chief Justice. Dickinson appeals from a decision of the Patent Office awarding priority to Swinehart for a method of making a cord fabric or fabric carcass which forms the foundation of a pneumatic tire. There are seven claims involved, of which Claim 1 is illustrative. It is as follows:

"1. The method of making a tire skeleton, which comprises winding cord spirally around a support to produce a fabric web, and thereafter shifting said cord to change the angle of the cord elements relative to the sides of said fabric web."

[1] Swinehart filed his application on December 16, 1914, and Dickinson on February 26, 1915. Therefore the onus of proof is on Dickinson. The Examiner of Interferences found in favor of Dickinson, but he was reversed by the Board of Examiners, whose decision was affirmed by the First Assistant Commissioner.

The record establishes that Dickinson conceived the invention in August, 1912, and disclosed it in the following November. Immediately after the disclosure, he caused a draftsman to commence work on drawings for a machine for manufacturing a tire skeleton according to the method of the issue. This work was continued until March, 1913,

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

when it was turned over to another draftsman. Dickinson, by reason of his brother's illness, was required to be absent from New York, where the work was being carried on, for a considerable period in 1913, and during the month of January, 1914; but while he was away his draftsman was at work under his directions communicated by letter. In June of the latter year, Dickinson had, according to his own testimony, supported by that of three witnesses, completed a model apparatus by which a complete fabric carcass could be made, and he also constructed on the model such a carcass by pursuing the method of the issue; but the Board and the Assistant Commissioner thought that he should have gone further, and shown that the cords as laid up by him on the model could be embodied into a fabric tire without further invention, and that, since he had failed to do this, he was not entitled to have the work done in June considered as a reduction to practice.

The Examiner of Interferences, on the other hand, was of the opinion that the counts of the issue did not require him to do more than he had accomplished. We doubt this. He was required to produce a "tire skeleton" or carcass. Unless the skeleton constructed by him could be used in making a tire, it would not meet the issue, since it would not be a "tire skeleton." But, as we view the case, this is immaterial.

[2] Dickinson, as we have said, was the first to conceive and to disclose the invention. This is clearly established. Was he diligent between the disclosure and the date on which he filed his application? The diligence required is not extraordinary. It needs to be only reasonable under the circumstances of the case; nor does it "involve uninterrupted effort nor the concentration" of all the applicant's energies upon the single enterprise. "The health, the means, the liberty of the inventor * * * are proper subjects for consideration" in determining the question. 1 Robinson on Patents, § 387; Walker on Patents (5th Ed.) § 91; Courson v. O'Conner, 227 Fed. 890, 894, 142 C. C. A. 414.

[3] From Dickinson's return to New York after the January, 1914, absence, he was continuously at work until he filed his application in the Patent Office, February 26, 1915. This is made clear by his own testimony and that of his witnesses. And the Board of Examiners found "that the proofs of his activity during that period are fairly satisfactory." Serious fault, however, is found with the evidence covering the time between his disclosure in November and his return to New York in 1914.

We have already called attention to the work done anterior to March, 1913, when he employed a new draftsman, one Hawkins. In addition, it should be stated that at the time of the disclosure he made arrangements with Block to supply finances for the development of his ideas and the manufacture of a model embodying them. Hawkins says that Dickinson endeavored to have him come to Indiana to carry on the work with him there, but that he had transactions in New York from which he could not separate himself; that he was in continuous communication with Dickinson during his absence, concerning dif-

ferent phases of the work, and that the work on the machine drawings was carried on "without interruption during his [Dickinson's] absence." Mansuy, an experienced tire constructor, corroborates Dickinson and Hawkins in many important respects. He says that between August, 1912, and the time he was testifying, Dickinson called on him frequently and thoroughly discussed with him the construction of the machine and the drawings therefor.

The First Assistant Commissioner criticises this testimony on the ground that it is too general, and adds that in his view the drawings introduced in evidence did not indicate that any such period of time as the witnesses said was necessary for their preparation. Perhaps not, but the drawings in evidence were not the only ones upon which work had been done. Dickinson testified that "many of the study drawings were destroyed with intent, and many of the assembly and detail drawings were ruined by the overturning of a vessel of some kind containing acid. * * *"

All the witnesses testifying to what Dickinson did were intelligent men, familiar with the subject about which they testified, and, with the exception of Dickinson, were disinterested. If we believe them, and there is no reason why we should not, we must conclude that during the period in question work on the machine drawings was carried on, in the language of Hawkins, "without interruption." Of course, it may be that the drawings could have been made in a shorter time, and that every moment of the inventor's time was not given to their preparation or work in connection therewith; but this was not necessary. "The law," says Judge Drummond, "looks with indulgence upon the delays which arise from the circumstances of the parties who may make an invention, and it is only when the invention is intentionally abandoned or neglected that the law declares they shall not be protected in their invention." Sayles v. Chicago & N. W. R. R. Co., 1 Bissell, 468, Fed. Cas. No. 12,414. There is nothing here to indicate intentional abandonment or neglect. Everything points to the contrary.

Swinehart does not claim conception and disclosure prior to February, 1913, and, according to his own testimony, did not make a frame on which to wind the cord in forming the carcass by the method called for by the issue which he "considered practical" until February, 1915. In view of this, the earliest date which can be given to him for reduction to practice is his filing date, December 16, 1914. Dickinson having conceived and disclosed the invention in 1912, several months before him, and having been reasonably diligent from that time down to the filing of his application, he is entitled to priority over Swinehart.

The decision of the Patent Office is therefore reversed, and priority is awarded to Fredrick S. Dickinson.

Reversed.