80 C.C.P.A.(Patents)

**SPERRY v. AUFIERO et al.**
**Patent Appeals No. 4656.**

Court of Customs and Patent Appeals.
Feb. 1, 1943.

Rehearing Denied Feb. 26, 1943.

Zabel, Carlson & Wells, of Chicago, Ill. (Max W. Zabel, Greek Wells, and Foster York, all of Chicago, Ill., of counsel), for appellant.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (Arthur H. Boettcher, of Chicago, Ill., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter of the six counts in issue to appellee Mayo. Originally a series of interferences involving additional parties was declared, but by the elimination of certain parties and the consolidation of issues the present interference having three parties, Sperry, Aufiero and Mayo, resulted. The party Aufiero did not appeal to this court. Hereinafter the party Mayo is referred to as the appellee.

The interference as it comes to us involves an application filed by appellee March 28, 1936 and an application of appellant filed March 20, 1937. Appellant being the junior party has the burden of proving priority of invention by a preponderance of the evidence.

Counts 1 and 5 are illustrative and read as follows:

"1. In a fluid-heated type heater for the passenger compartment of automotive vehicles, a fluid-heated radiator core having a plurality of air heating passages each communicating at its two ends respectively with the interior and exterior of the casing, a pair of air impellers within the casing, one adapted to discharge a relatively large flow of air from the casing

to the compartment through a relatively large number of said passages, the other impeller adapted to draw another supply of air through a relatively smaller number of other of said passages to the interior of said casing, a wall of the casing providing an inlet port for air supply to the first impeller, a casing wall providing also a port for discharging the air operated upon by the second impeller from the casing, said second .impeller relatively so disposed and formed as to effect a greater difference in air pressures on its approach and discharge sides than said first impeller, said casing comprising conduits and said passages and ports substantially comprised in two separate sets of serially related ducts, each set separately conducting air impelled by a different of said impellers into and from the casing, under different air-flow inducing pressures, and a common motor adapted to simultaneously operate both said impellers.

"5. A heater comprising, a heating radiator means for guiding air through the radiator in separate paths, a fan of the axial delivery type for forcing air through one path, a fan of the radial delivery type for forcing air through another path, and a single motor operating both air forcing means."

The involved invention is sufficiently described in the above-quoted counts.

Appellant's preliminary statement alleged conception of the invention and disclosure to others on or about the tenth day of January 1936; and it is alleged that within a few days subsequent to that date he embodied the invention in a machine having all the necessary elements to demonstrate reduction to practice of the invention and that said machine, although not containing all the elements of the complete device, was an actual reduction to practice, and that his device was successfully operated.

Appellee in his preliminary statement alleged conception of the invention and disclosure to others as of February 27, 1936 and reduction to practice as of March 26, 1936.

Both parties here took testimony.

It appears from the record that appellant in the year 1935 became interested in the question of causing currents of air to move in opposite directions by means of an ordinary air propelling fan and a Sirocco or blower type fan mounted directly behind the former and on the same shaft,

the end of the shaft extending through a motor immediately behind the Sirocco or blower fan. Before mounting the propeller fan on the shaft two holes were bored in each of the four fan blades close to the base of each. Appellant testified that work began on this device, known as exhibit 1, between September 5 and 21, 1935. None of the elements in this device was new; the function of each was well known.

For a test of the device appellant said that he put an ordinary heater core, such as is found in automobile heaters, in front of the fan assembly, put a shroud around the blower and by motor rotation of the fan assembly discovered that he could draw air through the rotating propeller fan sufficient to produce a volume of air for the blower. Appellant testified that he was endeavoring to substantiate his theory of directing air through a heater core so that heat would be drawn directly from the heater and at the same time provide a current of heated air moving in an opposite direction so that a volume of air could be used for other distributing purposes, for instance, to produce heated air in the body of an automobile for rear seat heating and at the same time directing heat to the driver's feet and for defrosting purposes. According to appellant's testimony, the operation of this device enabled him to obtain air through the center of the propeller type fan.

Exhibit 2, which appellant states was made and tested October 15, 1935, comprises the assembly of a motor, a brass housing approximately four inches in diameter and two inches wide, tangent to which protrudes a brass rectangular spout the full width of the housing, in which housing is a metal wheel about two inches in depth and three inches in diameter on the outer edge of which are soldered six blades of a propeller type fan. These blades appear to be the outer halves of conventional propeller fan blades. The cylindrical surface of the wheel consists of blades of the blower fan type and the bottom is a circular plate. The motor is connected to the housing and contained wheel by means of a shaft, the wheel being rotated by the action of the motor. The motor is attached to the housing by means of angle-irons and screws or bolts.

Exhibit 3 is an ordinary automobile heater coil in the conventional rectangular casing. It has a steel plate backing in which there is a large circular flanged opening. Soldered to the heating core in

the center of the opening there is a circular brass ring of about the same diameter as that of the blower fan. The plate has two L-shaped brackets to which exhibit 2 is intended to be fastened, and over those brackets is a large U-shaped bracket. At each of two diagonal corners of the casing protrude copper pipes which are the circulatory water-heating means for the core. Appellant testified that exhibit 3 without the U-shaped bracket was completed about the same time as exhibit 2. An assembly of exhibits 2 and 3 was made by placing lugs of exhibit 2 on the smaller brackets of exhibit 3 and connecting the same. This placed the blades of the propeller fan over the circular area between the said flange and the smaller brass ring, and the blower fan portion of the device directly over the smaller brass ring. Appellant testified that after the assembly was made it was tested by drawing smoke through the core by means of the wheel device.

It was testified by appellant that the operation of the assembly of exhibits 2 and 3 did not draw as great a volume of air as he desired, so he decided to make a blower of larger diameter. He stated that in about two weeks after the testing of the assembly exhibits 2 and 3, he had made, under his direction, another propeller fan and blower model, which is known as exhibit 4. This exhibit differs from exhibit 2 mainly in that the diameter of the blower wheel is greater. In all other respects it is substantially the same as exhibit 2. Appellant stated that exhibit 4 was assembled with exhibit 5 (substantially the same device as exhibit 3) and believed it was tested by putting hot water through the core and that the B. T. U. heat dissipation of the entire unit was calculated. Appellant testified that exhibits 4 and 5 were completed about two weeks after exhibit 2 was completed, which was October 15, 1935.

The witness Deane, a builder and designer of motors, was the motor department manager of Excel Auto Radiator Company, of which appellant was the mechanical engineer and general manager. He testified that he made the motor and also cut the holes in the propeller blades of exhibit 1. He stated he did this at the request of appellant, who, he said, had the idea that because the air in front of the center of propeller fan blades is always dead he could utilize the dead air space "by putting holes in there and feeding a Sirocco blower." He testified that this work was done in the latter part of August 1935. The witness testified that he saw exhibit 1 being tested with cigarette smoke by appellant, which tests he said were made after he had completed the holes in the fan, and that he also saw exhibit 2 being made sometime in September 1935. On being shown exhibit 3, the witness said he recognized only the bracket that was made for exhibit 2 but he recalled that the device he saw included the U-shaped mounting bracket and that he saw exhibits 2 and 3 assembled but the only test he saw made on that unit was with smoke. In summary the witness Deane stated that he saw the first test (of exhibit 1) in the latter part of August and a second test (of the assembly of exhibits 2 and 3) in September of 1935, and that the tests consisted of holding a cigarette in front of the blower and watching the smoke go into the blower and out through the blower outlet.

The witness Peto was, during the years 1935, 1936 and 1937, employed by the Excel Auto Radiator Company in experimental work and special die and fixture work. He testified that exhibit 2 was "mostly" constructed by him under direction of appellant. In this connection he stated as follows: " * * * I received a blower used in this device with four blades mechanically secured to the outside diameter. I dismantled the four original blades and changed to six. The four was on when I got it. I then constructed the blower housing which had a straight spout, which was later changed to one put on at an angle. This same device, with the spout changed to an angled position. The motor was made up for this device at that time."

He stated that the motor on the exhibit was made by Mr. Deane, saying that "it was under his supervision for this device." The witness Peto said he assembled the motor with the housing and the fan and that " * * * To establish a test, we constructed a steel plate, very large square, which was mounted on a clamping device to hold it erect. We built in a shroud and clamped on the radiator core, which was later tried out for efficiency of air. I also mounted on to that plate two brackets for holding the device, Exhibit 2."

The witness described the test as follows: " * * * The complete device and equipment was moved from my bench

to a newly constructed laboratory where we had the power and instruments for testing velocity of air. There it was tested with smoke from burning rags."

The witness further testified that the brass circular flange on exhibit 3, heretofore mentioned, was made by him and is what he called a "shroud". He testified that he and appellant were present at that test. The evidence of this witness shows that after what he calls the first experiment with exhibit 2, exhibit 4 of a larger capacity was built by him with the assistance of one Golick. He also stated that he and Golick constructed exhibit 5 and that after it was constructed exhibit 4 was mounted thereon and it was taken to the laboratory and connected to a hot water supply and electricity. The witness then testified as follows: "* * * We made a test for electrical rating of amperes, the amount of air that was passed out to the outside, the temperature of it, and efficiency of the defroster, which was also tested for temperature of air."

The witness stated that the testing of exhibits 2 and 3, 4 and 5 was done about three or four or five months after the laboratory was built, which the record shows was in June or July 1935. He stated that appellant first talked to him in the fall of 1935, when appellant was going to make a trip, and on that occasion appellant told him he had a new type fan and blower defrosting combination which he would work on when he returned from the trip, about the last "week and a half" in September 1935.

No documentary records of the dates of making, assembling or testing appellant's exhibits were offered in evidence.

The Examiner of Interferences in his decision thoroughly discussed the testimony on behalf of appellant in connection with his exhibits. He held that none of said exhibits met the limitations of counts 1, 2, 3 and 4 and because of said holding restricted appellant to his filing date for conception and constructive reduction to practice with respect to those counts. In that decision it is stated appellant acknowledged in his brief that he could not prevail as to counts 3 and 4.

The examiner stated that the testimony with respect to exhibits 2 and 3 was sufficient to prove their assembly in cooperative relation at least by the end of October 1935 and sufficient to establish conception of the invention defined by counts

5 and 6 as of that date. He therefore awarded appellant the date of January 10, 1936, the date alleged in his preliminary statement, for conception of the invention. The examiner held that there was no evidence of diligence shown by appellant subsequent to June 1936 and for the reasons stated he refused to award priority of invention of the subject matter of counts 5 and 6 to appellant.

With respect to the tests of exhibits 2 and 3 the examiner stated as follows:

"The tests to which Sperry exhibits 2 and 3 were subjected appear to have been entirely inadequate to satisfy the requirements for reduction to practice. The party Mayo contends that it would be necessary to install and successfully operate such a device in an automobile to achieve an actual reduction to practice. While this might be necessary for some devices, it is not believed that it would be essential in this case if sufficiently thorough, accurately measured tests under suitable conditions were carried out in a laboratory. However, the tests performed by Sperry apparently involved nothing more than a visual inspection of the air flow, made possibly by introducing smoke into the air stream. This is clearly not a sufficient test. Moreover, the only evidence that even suggests that this single inadequate test produced satisfactory results is the statement by Deane that—

" 'We found that we got enough suction by holding our cigarette in front of the opening of the blower (illustrating), by watching the smoke go into the blower and out through the blower outlet.' (Sperry record, page 77 XQ. 61.)

"Such an uncertain test could hardly be accepted as sufficient to establish satisfactory operation of even the single feature of the device (the blower) which was investigated. Furthermore, Sperry himself stated that exhibit 2 did not deliver as much air as was desired (Sperry record, page 37, Q. 33). Apparently the heating capacity of the unit and the efficiency of the propeller type fan were not even tested.

"The evidence relating to Sperry exhibits 2 and 3 does not establish satisfactory operation of those devices for their intended purpose, and, therefore, falls short of proving actual reduction to practice."

In discussing the testimony with relation to exhibits 4 and 5 the examiner stated: "* * * Except for Peto's uncer-

tain and indefinite statement * * *, there is no corroboration of Sperry's own testimony as to the approximate date when exhibits 4 and 5 were assembled together and tested. This kind of proof is not of such a satisfactory character as is required to carry a junior party's date of invention back of a senior party's filing date. The probabilities are that exhibits 4 and 5 were made, assembled, and tested before the end of December, 1935, but the examiner of interferences is not warranted in speculating as to probabilities in such a case. The evidence is deemed insufficient to establish the cooperative assembly and testing of Sperry exhibits 4 and 5 prior to March 28, 1936, the filing date of the senior party, Mayo."

Further in his decision the examiner said: "The assembly in question [exhibits 4 and 5] clearly responds to all the limitations of counts 5 and 6, and the tests to which the device was subjected appear to have been more complete than those to which exhibits 2 and 3 were subjected. However, the results of those tests were not divulged by the witnesses and no records of the tests were introduced in evidence. There is not even a broad statement to the effect that the results were satisfactory."

The Board of Appeals, in affirming the decision of the Examiner of Interferences, held the tests to be insufficient, and in this connection stated as follows: " * * * The only purpose of the device disclosed in the Sperry application is in connection with an automobile, but it is obvious from the Sperry record that no test of this type was carried out. The party Sperry contends that the completion of the unit disclosed in Exhibits 2, 3, 4 and 5 constituted a reduction to practice in that one examining the same could readily calculate the amount of air delivered by each of the fans. While it is true that there have been cases such as cited by the Court in Rolfe v. Hoffman, cited by the Examiner of Interferences, [118 Off.Gaz. 833, 1905 C.D. 352], in which it was held that the mere production without any successful test would be reduction to practice, still this is not the situation here. The cases mentioned by the Court related to simple devices having no moving parts, but in the present case it is clear that while the fan devices would rotate, it is not clear that they would successfully perform the functions desired. For reasons stated we can see no error in the decision of the examiner holding Sperry's alleged reduction to practice insufficient."

The citation by the Examiner of Interferences of the case of Rolfe v. Hoffman, 118 Off.Gaz. 833, 1905 C.D. 352, was evidently an inadvertence. The case cited, it will be seen, is a decision of the Commissioner of Patents. That decision was reversed by the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia) in Rolfe v. Hoffman, 26 App.D.C. 336. In that decision the Court of Appeals held that the mere construction of simple devices constituted reduction to practice, actual tests not being essential to establish such reduction to practice.

Appellant contends here that his device not only meets the limitations of counts 1, 2, 5 and 6, but also that it is so simple that its mere assembly is sufficient to constitute a reduction to practice. He further contends that his device was sufficiently reduced to practice with respect to all of the counts.

There is nothing in the reasons of appeal with respect to counts 3 and 4 which would invoke our jurisdiction, all of said reasons being confined to predicating error in the decision of the board with respect to counts 1, 2, 5 and 6. Since those counts are not before us they will not be considered and argument contained in appellant's brief concerning them must be ignored.

It is clear that appellant did not construct any device meeting the limitations of "a pair of air impellers within the casing" contained in count 1, and "the combination with a ported heater casing, a motor in the casing" contained in count 2.

Appellant's contention here is mainly directed to his alleged right to priority of invention as defined by counts 5 and 6. To sustain this contention his argument is based mainly on exhibits 2, 3, 4 and 5 and the testimony in connection with those exhibits.

While exhibits other than those hereinbefore mentioned were received on behalf of appellant we do not deem it necessary to discuss them nor the testimony in connection with them for the reason that if the record with respect to exhibits 2, 3, 4 and 5 is not sufficient to establish priority of invention of the subject matter of counts 5 and 6 the other exhibits and testimony concerning them are of no assistance to him.

■ Assuming, without holding, that the assembly of exhibits 2 and 3 and the assembly of exhibits 4 and 5 were made on the dates claimed by appellant, it is clear that the testimony concerning the tests to which those assemblies were subjected is not sufficient to establish that the tests demonstrated a reduction to practice of the invention defined by counts 5 and 6.

■ We do not believe that appellant's device is simple enough to be classed with those devices the mere assembly of which is sufficient to constitute reduction of an invention to practice; such, for instance, as the electric service switch box involved in Sachs v. Wadsworth, 48 F.2d 928, 18 C.C.P.A., Patents, 1284, the means for mounting an outlet box in Buchanan v. Lademann, 54 F.2d 425, 19 C.C.P.A., Patents, 836, the magazine clip in Mason v. Hepburn, 13 App.D.C. 86, the horse-collar in Couch v. Barnett, 23 App.D.C. 446, the snap hook in Schartow v. Schleicher, 35 App.D.C. 347, and the clamp for holding the blade of a safety-razor in position involved in Gaisman v. Gillette, 36 App.D.C. 440.

■ The sole purpose of the invention here relates to the heating of an automobile by an apparatus or device which comprises means for heating the interior of an automobile with two currents of heated air moving in different directions. It is old in the art to heat the interior of an automobile by means of heated air moving in a single path. The heated air circulating means of appellant's device was novel in that it comprised on the circumference of the Sirocco or blower fan the outer portions of six blades of the propeller type fan. There is no evidence before us sufficient to establish that appellant's air circulating means was adequate to produce the result sought by the operation of his device. While we do not think it was necessary for appellant to have installed his device in an automobile and to have tested it under actual operating conditions, nevertheless it was incumbent upon him to make his tests under comparable conditions. Wilson et al. v. Sherts et al., 81 F.2d 755, 23 C.C.P.A., Patents 914; Smith v. Place, 84 F.2d 196, 23 C.C.P.A., Patents 1260; Myers v. Roethel, 90 F.2d 122, 24 C.C.P.A., Patents, 1213; Smith v. Swaine, 127 F.2d 140, 29 C.C.P.A., Patents, 973. Whether or not appellant's tests were made under comparable conditions we cannot ascertain from the record. Appellant himself did not testify positively that his assembly of exhibits 4 and 5 was connected with a hot water system, and his sole corroborating witness with respect to that test stated unequivocally that he was no judge of the efficiency of automobile heaters. While appellant "believed" that the test of that assembly included a connection of the heating core with hot water and stated that in the test the B. T. U. heat dissipation of the entire structure was calculated neither he nor any other witness has testified what the result of such calculation was.

It seems to us it would have been a simple matter for appellant to have testified what the actual result of such test was with respect to the temperature of the air coming from the propeller and blower fans respectively, the pressure and volume thereof and whether or not it was sufficient to heat the interior of an automobile. In the face of such a record we cannot indulge in speculation, surmise or inference, which we would be compelled to do if we were to hold any of the tests of appellant's device to have been sufficient.

■ The Examiner of Interferences properly held that appellant's record was sufficient to establish that he had a conception of the invention as to counts 5 and 6 in October 1935. It is clear, however, that appellant did not exercise reasonable diligence throughout the critical period from immediately prior to March 28, 1936 to March 20, 1937, his filing date. The record shows that appellant made another air circulating device comprising the two fan assembly and housing in May or June 1936. That fan blower housing assembly is in evidence here, represented by exhibit 8. It differs in no essential particular from exhibits 2 and 4. However, there is nothing in the record to advise us that appellant did any work upon the involved invention between that date and the date upon which he filed his application.

For the reasons hereinbefore set out the decision of the Board of Appeals affirming that of the Examiner of Interferences awarding priority of invention of the subject matter of counts 1, 2, 5 and 6 to appellee Mayo is affirmed.

Affirmed.