35 C.C.P.A.(Patents)
### POWELL v. POUPITCH.
### Patent Appeals No. 5428.

Court of Customs and Patent Appeals.
April 6, 1948.

Walter I. Jones, of Cambridge, Mass. (Charles F. Miller, Jr., of Washington, D. C., of counsel), for appellant.

Moore, Olson & Trexler, of Chicago, Ill. (Roy H. Olson and Curtis F. Prangley, both of Chicago, Ill., Robert W. Byerly, of New York City, and Charles L. Sturtevant, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the counts in issue to Ougljesa Jules Poupitch, appellee. The interference is between appellant's application No. 459,-896, filed September 28, 1942, and three patents to appellee, No. 2,324,268, granted on an application filed January 30, 1942, No.

2,324,269, granted on an application filed April 8, 1942, and No. 2,314,368, also granted on an application filed April 8, 1942.

Count 1 is sufficiently illustrative of the counts in issue. It reads: "A sheet metal fastening device having a portion adapted to be secured to a support, a locking section normally spaced from the plane of said first mentioned portion and centrally apertured to accommodate a rotary stud equipped with oppositely disposed lateral lugs and carried by a member adapted to be detachably associated with said support, the material of the locking section in the vicinity of said central aperture being outwardly stressed to provide arcuate cam surfaces projecting outwardly beyond the surface of the locking section stock for cooperation with said lateral lugs, and a sheet metal stud ejecting spring elements having a free extremity positioned externally of said cam surfaces."

The invention in issue relates to metal fasteners of the rotary stud type, especially designed for coupling airplane cowling sheets together. Each of the fasteners disclosed by the parties comprises a sheet metal part which is apertured to receive the shaft of a stud which passes through registering openings in the two parts which are to be joined together. The stud carries a cross pin which, upon rotation of the stud, engages the sheet metal part to prevent removal of the stud.

The Board of Interference Examiners held that appellee had established no date of invention prior to the filing dates of the applications on which his patents were issued, namely, January 30, 1942, for count 5, which originated in his patent, No. 2,324,268, and April 8, 1942, for the other counts, which originated in his patents, Nos. 2,324,269 and 2,314,368. The board further held that appellant had established conception of the invention in issue, and the embodiment of his conception in a device as early as October 1941, but that appellant had failed to establish reduction to practice prior to his filing date, September 28, 1942, and had also failed to show diligence over the period from immediately prior to April 8, 1942, when appellee's last two applications were filed, until appellant filed his application on September 28, 1942.

The evidence on behalf of appellant establishes the making of a device in October 1941, which device was held by the Board of Interference Examiners to satisfy the requirements of each of the counts. The evidence, however, fails to show any actual tests of this device as a fastener on airplane parts or elsewhere, the device being merely operated by hand and not used to secure any two parts together.

It is, of course, the general rule that a reduction to practice can be effected only by tests in actual service, or under conditions simulating those of actual service. See Sperry v. Aufiero et al., 134 F. 2d 174, 30 C.C.P.A., Patents, 908. Exceptions to the rule stated are made only in cases where the invention is simple and the manner in which it will operate can be determined by inspection alone. In the instant case it is quite clear, in view of the strains and vibrations to which parts of an airplane are subjected in use, that it would be impossible to determine whether or not a cowling sheet fastener would operate satisfactorily without making tests in actual service. The fact that generally similar fastening devices had been used successfully does not establish that the device made by appellant in 1941 would have been successful in actual use, since it is evident that very slight differences in the proportioning and arrangement of the parts of a locking device may make the difference between success and failure, especially under such conditions as are encountered in airplanes.

[3] Counsel for appellant points out that the interference counts do not limit the fastening means to use on an airplane. This is true, but appellant's application indicates no other use for the device disclosed, and the device made by appellant in 1941 was not tested as a fastener on any article. Since the device was not tested in the place where it was designed to be used, a reduction to practice cannot properly be accorded on the basis of speculation that there might have been some possible use for which its suitability might be obvious without actual tests.

The case of Smith v. Place, 84 F.2d 196, 23 C.C.P.A., Patents, 1260, relied on by appellant, involved a snap fastener of quite a different type from the fastening means here involved. In that case it was held to be obvious from mere inspection "that the invention must be successful for the purpose intended." As hereinbefore pointed out, it is not obvious from inspection of the fastener made by appellant in 1941 that it would be successful for the intended use on an airplane. The present case, therefore, is clearly distinguishable from the case of Smith v. Place, supra.

We are of opinion that the invention here in issue is not of such a nature that it can be held to have been successfully reduced to practice without testing it as an actual fastening means, and that the Board of Interference Examiners, therefore, properly held that appellant had not established a reduction to practice of the invention prior to his filing date, September 28, 1942.

Counsel for appellant contend that appellant should be accorded a constructive reduction to practice on the basis of an application filed by Walter I. Jones on January 16, 1942, and assigned to the assignee of appellant's application. However, an application by one inventor cannot inure to the benefit of another even though the applications have a common assignee. See Hartley v. Joyce, 96 F.2d 296, 25 C.C.P.A., Patents, 1100.

It remains to be considered whether appellant exercised reasonable diligence in preparing and filing his application during the critical period. The testimony of appellant's witness Walter I. Jones is to the effect that the device called for by the claims in issue, which was completed in October 1941, was at that time turned over to one John Todd, who prepared patent applications for the United-Carr Fastener Corporation, appellant's assignee, with instructions to prepare an application on that device. Todd left the employ of the corporation in February 1942 and, up to that time, had done nothing toward preparing such an application.

On February 28, 1942, the witness Jones wrote to Charles F. Miller, one of appellant's counsel and who testified in the case, asking if Mr. Miller could do patent work for the United-Carr Fastener Corporation. In response to this letter, Mr. Miller went to Cambridge, Massachusetts, on March 9, 1942, at which time about thirty different constructions were turned over to him for the preparation of patent applications. The next evidence of activity in preparing appellant's application involved in this interference is the testimony of Mr. Miller to the effect that he prepared sketches for the draftsman, the witness George L. Fowler, which sketches he took to Cambridge on June 8, 1942, and explained them to Mr. Fowler who was to prepare the drawings for the patent application. Mr. Miller further testified that he prepared a draft of the specification and forwarded it to the witness Jones on August 27, 1942. The application, in final form, was executed on September 25, 1942, and filed on September 28, 1942. The application is a comparatively simple one, including only two sheets of drawings.

It thus appears that on April 8, 1942, which is the latest date that can be ascribed to appellee for his reduction to practice of any of the counts of the present interference, nothing was being done toward the preparation of appellant's application. At that time, it was merely one of a large number of cases which had been assigned to Mr. Miller a month earlier, and on June 8, 1942, two months later, nothing had been done beyond the making of some preliminary sketches. After those sketches were made, more than three and one-half months more elapsed before the application was filed.

[6] It is evident that, if appellant's application be considered alone, the time required for its preparation was unreasonably long, and that if the delay is to be excused it must be on the basis of other duties which required Mr. Miller's attention. It is true that diligence does not require that an attorney shall drop all his other work and concentrate on a single invention and that, if he has a reasonable backlog of work and takes up his cases in the order in which they are filed, this is sufficient.

In the instant case, however, it appears that appellant's application here involved

**518**

was not prepared in its regular turn, but that work on it was deferred in favor of other applications. Thus, Mr. Miller testified as follows: "During my visit here in March of 1942 I talked with Mr. Powell. It is my recollection that he stated that he did not understand that this construction had gone into commercial production or had been placed on sale. I therefore decided that it was not as important in order of time as some of the others that had been placed in commercial production. As I was quite busy in connection with some other Interferences and litigation at the time, I deferred preparing an application in this case until after the more urgent cases had been prepared."

It is clear from the quoted statement that appellant's application was not prepared in regular order, but that work on it was delayed in favor of applications which were considered more important. The situation presented is, therefore, similar to that in the case of Brown, Jr. v. Barton, 102 F.2d 193, 26 C.C.P.A., Patents, 889. In that case, although the requirement of diligence extended over a period of only slightly more than five weeks, it was held that diligence was lacking where the application in question was passed over in favor of other applications. In the instant case, the critical period is much longer than it was in the case of Brown, Jr. v. Barton, supra.

■■ The question of diligence is one which must be determined by consideration of the particular circumstances of each individual case. We are of opinion that, under the circumstances of this case, appellant and his assignee were lacking in diligence during the period between April 8, 1942, when appellee had constructively reduced to practice the subject matter of all the counts of this interference, and September 28, 1942, when appellant's application here involved was filed. Having been the last to reduce the invention in issue to practice, and having been lacking in diligence during the critical period, appellant is not entitled to prevail in this proceeding. Accordingly, it is unnecessary that we consider appellee's contention that appellant's application will not support the interference counts.

For the reasons stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.