56 CCPA

**Meyer SLETZINGER, Appellant,**

v.

**Frank H. LINCOLN, William P. Schneider and George B. Spero, Appellees.**

Patent Appeal No. 8156.

United States Court of Customs and Patent Appeals.

May 29, 1969.

Frank M. Nolan, New York City, for appellant; I. Louis Wolk, Rahway, N. J., of counsel.

Talivaldis Cepuritis, Kalamazoo, Mich., for appellees; Eugene O. Retter, John Kekich, Kalamazoo, Mich., of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority to Lincoln, Schneider and Spero (Lincoln et al.), in interference No. 91,-

155, involving Lincoln et al. application serial No. 753,157, filed August 4, 1958, entitled "Organic Compound and Process" and Sletzinger application serial No. 746,661, filed July 7, 1958, entitled "16-substituted Steroids."

The real parties in interest are Merck & Co., Inc., assignee of Sletzinger, and the Upjohn Company, assignee of Lincoln et al.

The invention involves steroid compounds of the pregnene series having an unusually high degree of anti-inflammatory activity without the undesirable side effects allegedly associated with certain other, currently available, anti-inflammatory steroids. The sole count of the interference reads:

A compound of the group consisting of pregnenes of the formula:

and the 1-2, dehydro analogs thereof, wherein X represents a member selected from the group consisting of β-hydroxyl and keto, Y represents a member of the group consisting of hydrogen and halogen, and R represents a member of the group consisting of hydrogen and lower alkanoyl.

Neither of the parties relies upon an actual reduction to practice and the question here is whether the junior party, Lincoln et al., has established prior conception coupled with subsequent diligence to justify the award of priority of invention.

The parties stipulated that the testimony of witnesses might be submitted by affidavit and that, as to exhibits, photoprint copies might be submitted in place of original documents. In addition, the record includes other testimony taken on deposition.

Although there is controversy (to be discussed hereinafter) as to the adequacy of some of the affidavit evidence, in the following summary, for the purpose of brevity, the principal items of evidence are given the construction most favorable to the parties by whom they were submitted.

Turning first to Sletzinger, his conception of the invention of the count on June 11, 1958 [1] is supported by a page bearing that date from the notebook of a co-worker Gaines to whom Sletzinger made the disclosure. On June 26 Sletzinger's superior at Merck requested the Patent Department there to prepare a patent application on the invention which was completed and mailed to the Patent

1. At oral argument appellant's counsel conceded Sletzinger this date for conception. All dates hereinafter are in 1958.

Office on July 3 and received a July 7 filing date.

As to Lincoln et al., conception is supported by a record of conception bearing the date May 6 (Exhibit L 1) in Schneider's handwriting signed by the other inventors, and corroborated by a fully qualified steroid chemist, Nathan. White, an Upjohn Patent attorney, describes a handwritten invention report (Exhibit L 27) submitted between May 19 and May 21 and Houghtaling, a secretary, describes typing a draft (Exhibit L 2) from the invention report on May 20. McClish, the docket clerk, received the typed draft on May 21, performed his duties on it, and passed it to Cheesman, the Upjohn Patent Department Section Head. Cheesman reviewed the report and on June 6 assigned it to White who received it that day. By June 10 White had completed a rough draft (Exhibit L 28) which his secretary Dickson received for typing on June 11 and completed on June 13. White was sick on June 16 but continued working on it on June 17 and June 18. On June 18 the application draft was reviewed by Cheesman who returned it with his approval on June 19. On that day it was handed over to McIntosh, an Upjohn patent liaison man, who reviewed it until June 26 when he sent it to the co-inventor Lincoln. After Lincoln's review, the application was passed some time between June 26 and July 1 to the co-inventor Schneider who stated that his review occurred on or about June 30 through July 1. The application then passed to the remaining one of the co-inventors, Spero, on or about July 2 and he completed his review on July 9. White got the rough draft back from Spero on July 14 through the Upjohn messenger service, and completed his revision of it on the same day. The secretary Dickson typed the final draft on multilith masters during the period July 14 through July 18 and copies were run off and proofread between July 18 and July 23. Copies of the final draft were sent to the inventors who reviewed it and returned it to the Patent Department on July 28. The inventors executed the application on July 29. The completed application was sent to Retter, the head of the Upjohn Patent Department, on July 30. On July 31, the docket clerk McClish mailed the application to the Patent Office where it received an August 4 filing date.

■ The board's lengthy opinion contains careful consideration and discussion of each of the Lincoln et al. affidavits and exhibits to find support for each of the events described above. As a result of such consideration the board decided:

> We have held above that Lincoln et al. established their conception as in May, 1958 and at least prior to the conception date alleged by Sletzinger of June 11, 1958. We also hold that Lincoln *et al.* have established reasonable dilligence toward a constructive reduction to practice from immediately prior to June 11, 1958, the alleged conception date for Sletzinger, until the Lincoln *et al.* application was filed on August 4, 1958. Under these circumstances, it is not necessary for us to go into the case for priority for Sletzinger * * *.

Here appellant argues that much of the evidence asserted for Lincoln et al. is inadequate because of a failure to satisfactorily relate the exhibits to the affidavits. It is apparently appellant's position that the Lincoln et al. exhibits should have been physically attached to the relevant affidavits at the time of submission. Thus appellant states:

> None of the documentary exhibits referred to in the Lincoln affidavits relied on by the Board of Patent Interferences for Lincoln's conception was in any way attached to the affidavits. Purported Lincoln exhibits were believed to be submitted to the Patent Office in a sealed envelope with the notation thereon that they were exhibits submitted on behalf of Lincoln. But there is no indicia in any of the relied on Lincoln affidavits that a purported exhibit or some other document was before the Lincoln affiants

when the Lincoln affidavits were executed.

The result of this alleged defect, appellant argues, is that many of the conclusions of the board regarding conception and diligence are erroneous. Thus, for example, considering the board's finding that Lincoln et al.'s conception on May 6 was established by the affidavits of the inventors and Nathan in conjunction with Exhibit L 1, appellant argues:

All three applicants, Lincoln, Schneider and Spero, state in their affidavits that a written record of conception was made on May 6, 1958 and that this record appeared in Exhibit L–1 * *. Nathan in his affidavit states that he signed his name on Exhibit L–1 on May 6, 1958 * * *. But there is nothing in the affidavits of Lincoln, Schneider or Spero or in the purported corroborating affidavit of Nathan that discloses the contents of purported Exhibit L–1. More particularly, the affidavits contain no disclosure of any of the compounds of count 1 or methods of producing such compounds. None of the other affidavits submitted on behalf of Lincoln discloses the contents of Exhibit L–1.

Turning to these affidavits, however, we find in each of them a clause which specifically relates the affidavit to the relevant exhibit. Thus, for example, the affidavit of Nathan includes the following averments:

THAT, I have examined the original of Exhibit L–1 and have compared it with the corresponding Xerox exhibits and find the latter to be an accurate reproduction of the former, and have compared the original with the corresponding entry in the accompanying list of exhibits and find the latter to be an accurate list of the former;

THAT, I am the person who signed my name to the bottom of page 25 of Upjohn Research Notebook No. 3815 (Exhibit L–1) on May 6, 1958;

It seems to us that this language relates the affidavit to the exhibit with a particularity and precision as sufficient as if

the exhibit had been stapled to the affidavit with a reference therein to the accompanying exhibits. We are not persuaded that the board erred when it stated:

We consider that the exhibits referred to in the affidavits were suitably and satisfactorily designated in the affidavits by the exhibit number. * * *

We therefore conclude that the affidavits and exhibits of Lincoln et al. are adequate evidence to support the board's finding of conception on May 6 as well as to support the existence of the events forming the sequence fully described in the board's opinion and summarized briefly above.

■ Even so, concluding that Lincoln et al. here satisfactorily proved as facts the sequence of events at Upjohn, the question remains whether that sequence shows, as a matter of law, diligence on the part of Lincoln et al. in the critical period from just prior to Sletzinger's conception on June 6 to the Lincoln et al. filing date of August 4. Sletzinger says not, arguing that there are gaps in the Lincoln et al. activities that show lack of diligence. Principally, Sletzinger points to an alleged gap in activity between June 27 and July 9, the period in which the first rough draft is supposed to have been passed successively from Lincoln to Schneider to Spero for review. As to this period, appellant argues that there is no corroboration of the review by persons other than the inventors, stating:

But *there is no corroboration* of the asserted review of the final rough draft by any of three applicants and the decision of the Board of Patent Interferences is devoid of any holding of corroboration of the review of the final rough draft by the inventors during the period of June 27, 1958 through July 9, 1958.

And concluding:

Without corroboration, the purported review by the three applicants of an alleged final rough draft of the Lincoln involved application could not constitute diligence. Since no other evi-

dence has been submitted by Lincoln in support of Lincoln's asserted diligence in the period from June 27, 1958 through July 7, 1958, the filing date of Sletzinger, Lincoln has failed to establish active diligence for the critical period commencing just prior to Sletzinger's filing date of July 7, 1958.

Although the testimony of the inventors, if standing entirely alone on this point, might not suffice, we believe that if there is other evidence present from which it may be inferred that the testimony of the inventors is correct, then their testimony does not have to be wholly disregarded. Here there is the affidavit of the patent liaison man McIntosh that on June 26 he sent the final rough draft to Lincoln and that he was certain that he "conferred with the inventors several times during each of their periods of review * * *." There is the affidavit of the attorney White that:

> 10. On July 14, 1958 said revised rough draft was returned to me from George B. Spero and on the same day, I completed the revision of said final rough draft by incorporating therein certain of the changes suggested by a Vern McIntosh and the inventors and, also on the same day, I turned the draft over to my secretary, Marva H. Dickson, for typing on multilith masters for subsequent printing as a final draft suitable for filing in the Patent Office;

These affidavits provide corroboration that the draft was in the possession of the inventors and inferentially there must have been review by the inventors in this period. Why else would the inventors have suggested the changes to which White refers? That the total period of review by the inventors was not unreasonable in view of the length of the application and the nature of the technical subject matter appears clear from the affidavit of the Patent Department Section Head, Cheesman, which states:

> THAT, the time required to review Case 1344 or a case of equivalent length and complexity was three to four days per reviewer and that this was consistent with the careful technical review I desired from inventors and the Patent Liaison Department, and that the receipt in the Patent Law Department on July 14, of the reviewed final rough draft of Case 1344 was not in excess of that normally required of such careful technical review particularly in view of the fact that the research chemists inventors were busily engaged conducting chemical research;

> THAT, the actual time involved was less than four days per reviewer; and considering that the draft had to be transferred from person to person at least five times and of which at least two transfers involved transfers by Upjohn messenger service (John L. White to a Vern McIntosh on about June 20, 1958 and George B. Spero to John L. White on about July 14, 1958) each of which could have consumed more than one-half day; the average review time for each technical reviewer was about three days each.

In view of the surrounding circumstances shown by the affidavits of McIntosh, White and Cheesman, there appears to be a reasonable basis for accepting the affidavit testimony of the inventors that they were indeed occupied in reviewing the draft from June 26–July 9. We do not consider that appellant has established lack of diligence by Lincoln et al. during that period.

■ As to the other alleged lapses of activity urged by appellant, these are all of such short duration [2] that we consider them to fall within the limits of reasonable diligence, referred to in the cases cited by the board,[3] which recognize the in-

2. For example, appellant points to a 2-day gap between execution of the Lincoln et al. application on July 29 and mailing it to the Patent Office on July 31.

3. Dickinson v. Swinehart, 49 App.D.C. 222, 263 F. 474 (1920); Martus & Becker v. Heise, 17 CCPA 1083, 39 F.2d 715, 5 USPQ 74 (1930); Farmer v. Schweyer,

evitable minor interruptions accompanying the conduct of patent prosecution.

In summary, appellant has not persuaded us of any error in the board's conclusion that Lincoln et al. had prior conception of the invention coupled with diligence until filing from just prior to Sletzinger's conception. The decision of the board is therefore affirmed.

Affirmed.

21 CCPA 865, 68 F.2d 961, 20 USPQ 281 (1934); Powell v. Poupitch, 35 CCPA 1080, 167 F.2d 514, 77 USPQ 379 (1948); Rines v. Morgan, 45 CCPA 743, 250 F.2d 365, 116 USPQ 145 (1957).