36 C.C.P.A.(Patents)

### FEARON v. KRASNOW et al.
### Patent Appeal No. 5431.

United States Court of Customs and Patent Appeals.

Jan. 5, 1949.

234

Robert F. Davis, of Washington, D. C. (Richard K. Stevens, of Washington, D. C., of counsel), for appellant.

Shelley Krasnow, pro se.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

GARRETT, Chief Judge.

■ This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office in Interference No. 80,375, awarding priority to Krasnow and Curtiss, joint applicants, hereinafter referred to as Krasnow et al. Their application, Serial No. 301,078, was filed in the Patent Office October 24, 1939. The application of Fearon, Serial No. 311,218, was filed December 27, 1939. So, upon the latter as the junior party there rested the burden of establishing priority by a preponderance of the evidence. The interference was originally declared August 18, 1942, with only two counts. On November 24, 1942, a third party was added. Fearon subsequently moved to add six additional counts, and on January 6, 1944, the motion having been allowed, the interference was reformed accordingly. The third party was eliminated by a decision of the board rendered January

12, 1945, because of failure to show cause why judgment of record should not be entered against him, and the proceeding continued between the original parties.

In describing the invention, the brief on behalf of Fearon states:

"The broadest aspect of the invention as stated by the counts includes (1) measuring phenomena characteristic of a geological formation, (2) producing oscillations, and (3) modulating the oscillations in accordance with the measurement.

"Various of the counts specify in addition, (1) that the phenomena be radioactivity, and specifically gamma radiation, (2) that the measurement be made, "in situ," or specifically "in a bore hole", (3) that the oscillations be "sustained electrical" and specifically oscillating carrier waves, (4) that the characteristics of the oscillations be dependent on the physical constants of the elements of the generator, and, specifically, that the natural frequency depend upon these constants, (5) that modulation be accomplished by a signal corresponding to the measurement, specifically an electrical signal, (6) that modulation be accomplished by varying a physical constant of an element in the oscillator.

"Some of the counts also specify transmission of the oscillations to a remote point and "determining" or recording. One count specifies an elongated capsule for enclosing the parts to be lowered into a bore hole."

The only description given by the board is embraced in a single sentence which reads:

"This interference relates to an apparatus and method for measuring radioactive properties in a borehole such as an oil well."

Of the eight counts involved, the board deemed count No. 2 illustrative, and we agree that it is. It reads:

"2. In an apparatus for measuring radioactive properties in a deep narrow bore-hole, a long narrow cartridge including a plurality of elements so related as to constitute a generator of sustained electrical oscillations, the natural frequency of the generator being dependent on the physical constants of the said elements, at least one of the elements being sensitive to radioactivity and having its physical constants dependent

upon the intensity of radioactivity in its vicinity, the change in physical constants causing a change in the natural frequency of the oscillatory circuit, the frequency generated serving as a measure of radioactive properties in the said borehole."

Testimony was taken by the respective contestants, and the record in the case is an extensive one to which we have given much study over a considerable period of time. First and last, many questions were raised before the board and many have been presented before us.

Notwithstanding the numerous issues and allegations before it however, the board passed upon only one question—that of diligence on the part of Fearon. He was held not to have established diligence, and that holding, if sustained, is of itself conclusive of the case.

In an early part of its decision, the board said:

"Neither party asserts an actual reduction to practice of the invention in issue. Fearon alleges disclosure to others on February 27, 1939, and diligence in reducing to practice beginning at that time and extending down to his filing date of December 27, 1939. As Krasnow et al. filed on October 24, 1939 the situation most favorable to Fearon would be that in which he would be accorded conception prior to the October 24, 1939 filing date of Krasnow et al.; in which event it would be incumbent on him to establish diligence beginning just prior to October 24, 1939."

From subsequent statements in the decision, it appears the board was of the opinion that Fearon was entitled to a conception date at least as early as February 27, 1939; and it found that a paper embracing the disclosure, which is a Fearon exhibit, was placed in the hands of Mr. Robert F. Davis, one of the attorneys in this case, along with a number of other disclosures hereinafter again alluded to, on May 4, 1939. It found, however, from the testimony of Mr. Davis that the first work done on the involved application began about November 8, 1939. This was some three weeks subsequent to the filing date of Krasnow et al., and, as has been stated, the Fearon application was not filed in the Patent Office until December 27, 1939, a few days more than two months after the filing of that of Krasnow et al.

The board made no finding as to conception on the part of Krasnow et al. at any date other than their filing date, and said:

"As a result of the view we have taken of this case it becomes unnecessary to consider the record of Krasnow et al., and the numerous contentions of both parties."

Except as hereinafter stated, those findings of fact of the board which are regarded as in any wise material on the question of diligence are not seriously challenged in the reasons of appeal or in the brief for Fearon.

It appears that during the first four months of 1939 Fearon, a consulting engineer, was employed by a concern known as Engineering Laboratories, Inc.; that on May 4, 1939, negotiations which for some time had been in progress between that company and Socony-Vacuum Oil Co. culminated in the organization of Well Surveys, Inc., which was to be jointly owned by Engineering Laboratories, Inc. and Socony-Vacuum Oil Co.; that Fearon then became associated with Well Surveys which became the assignee of his here involved application; that by the terms of the agreement between the companies, Socony-Vacuum was to pay all the patent expenses of the new company for a fixed period; and that, because such arrangement was contemplated during the period of negotiation, applications for patents covering various conceptions of Fearon had not been applied for by Engineering Laboratories while Fearon was connected with that concern.

It further appears that on May 4, 1939, when Well Surveys was incorporated, 23 disclosures were turned over to the attorneys for Socony-Vacuum, among them being the disclosure from which the here involved Fearon application was prepared. As has been hereinbefore recited, the board found that the idea was complete and approved for filing February 27, 1939, at which time Fearon was associated with or employed by Engineering Laboratories, but no application was then filed, and it appears that under the terms of the agreement all

23 of the items were first assigned to Well Surveys, and then reassigned to Socony-Vacuum. Ten of the twenty-three items appear to have been conceptions of Fearon.

The several items assigned to Well Surveys were marked by the letters "WS" with numerals 1 to 23, and the ten claimed to have been disclosed by Fearon were additionally marked by the letter "F" with the numerals 1 to 10. The particular disclosure here involved bore the marks "WS 13" and "F 6."

The following we quote (omitting the record page references) from the decision of the board:

"* * *. There is some conflict in the testimony as to the system used in assigning the numbers to the disclosures. Fearon and Davis both stated that the numbers were assigned arbitrarily without any significance as to the importance of the case. Dallas N. Lamont, Patent Attorney for Socony-Vacuum, who conducted the negotiations for the formation of the new company and who was present when the 23 new disclosures were turned over, stated that there was some order of precedence or importance assigned to the cases which were taken over in May of 1939 and that the present invention was classified in an intermediate category but he did not specifically state when the classification was made.

"Davis testified that during the period between the first part of May 1939 and December 27, 1939 he prepared 11 patent applications for Well Surveys based on the information turned over to him in May, of which 9 were filed on or before December 27, 1939. As far as Davis' testimony shows, the first work done on the involved application began about November 8, 1939, He devoted about 40-50 percent of his time to work for Well Surveys as he had numerous other clients. Among these other clients was Engineering Laboratories.

"During the months of October and November 1939, Davis worked on an application for Engineering Laboratories based on a disclosure which was given to him in August 1939. This work apparently began October 11. In connection with the work on the above Engineering Laboratories Application, Davis stated as follows:

" 'That there was at that time serious question of inventorship and ownership of the subject matter involved and that said question was discussed at considerable length and the filing of the application expedited in order to assist in clarifying the question of ownership of the subject matter while the facts were still clear in the minds of the parties concerned and the parties concerned were all available.'

"The fourth allegation of Fearon's reasons of appeal reads as follows:

"4. The Board of Interference Examiners erred in ruling as to the Fearon patent application involved in this interference that "the first work done on it was started after the Krasnow et al. filing date," and particularly in failing to take cognizance of conferences and correspondence between the attorneys and inventors and between the attorneys and Mr. Dallas R. Lamont, as constituting work on the application involved."

"The sixth allegation reads:

"6. The Board of Interference Examiners erred in ruling 'Nor is there any showing that cases of other clients were not given precedence over the Fearon case.' "

With respect to allegation No. 4, it is sufficient to say that from a most careful examination of the record we fail to find any tangible evidence relating to the subject matter of the particular Fearon application here involved indicating that it specifically was the subject of any conference or correspondence between Fearon (or his assignee) and the attorneys from the time it was placed in the hands of the latter on May 4, 1939, until work upon it began about Nov. 8, 1939.

It should be borne in mind that the board found, as hereinbefore stated, that Fearon's disclosure was complete and approved for the filing of patent application as early as February 1939. Krasnow et al. challenge the accuracy of this finding, but we find nothing of record which, in our opinion, would justify disagreement with the board. The application was prepared upon the basis of that disclosure, and, so far as the record shows, the attorney had no occasion to consult Fearon with respect to any of the tech-

nical features of the claimed invention. It is not seriously disputed that the Fearon application itself discloses the invention.

█ As for allegation No. 2, the finding of the board there claimed to have been erroneous was negative in character. The burden of course rested upon Fearon to prove diligence affirmatively. We do not find where any proof was presented affirmatively showing that cases of other clients were not worked on before the Fearon case was taken up, and we do not think the alleged error is well taken.

The other reasons of appeal do not require specific discussion.

The cases cited by the board in support of its conclusion are respectively Hull v. Davenport, 90 F.2d 103, 24 C.C.P.A. (Patents) 1194, and Brown, Jr., v. Barton, 102 F.2d 193, 26 C.C.P.A. (Patents) 889. The pertinent facts in both cases are regarded as apposite here. In the case of Hull v. Davenport, supra, it was found that there was delay for a period of about eight months after Hull had conceived the invention before his application was filed. He was awarded a date of conception of June 3, 1930, and he filed his application January 31, 1931. Davenport's application was filed December 30, 1930. It was found that neither party had actually reduced the invention to practice. We there pointed out, in effect, that it was unnecessary for Hull to have shown diligence from the date awarded him for conception, but that it was necessary for him to establish diligence from just prior to the date of the filing of Davenport's application up to the time of the filing of his own application, and found that he had failed to do so. In the course of our decision, we said [90 F.2d 106]:

" * * * The only act of diligence shown by appellant [Hull] or his attorneys during the entire seven-months period preceding the beginning of the alleged critical date was appellant's submission to his attorneys of his invention for the preparation of an application on June 3, 1930, or, as the record shows, within a week thereafter."

In that case we affirmed the decision of the Board of Appeals of the United States Patent Office which there had the jurisdiction of interference controversies now lodged in the Board of Interference Examiners.

In the instant case we are unable to find any showing of diligence on the part of Fearon, his assignee, or attorney except the filing with the latter on May 4, 1939, of the disclosure which the board found had been perfected several months prior.

In the case of Brown, Jr. v. Barton, supra, this court reversed the decision of the Board of Appeals of the United States Patent Office, citing as authority upon the question of diligence the case of Hull v. Davenport, supra. We there found that Barton was entitled to the date of August 22, 1932, for conception. The filing date of Brown, Jr. was September 24, 1932. We further found (it in fact being conceded) that there was no activity in the preparation of Barton's application between August 22, 1932, and October 18, 1932, upon which later date his attorney began work upon his application which was not filed until November 3, 1932. We said in substance that due diligence on the part of Barton was established between October 18, 1932, and November 3, 1932, but we were unable to find diligence from just prior to September 24, 1932, until October 18, 1932.

█ In the instant case it may be conceded that diligence was established on behalf of Fearon from about November 8, 1939, to December 27, 1939, but we are wholly unable to find any evidence of diligence prior to about November 8, 1939.

█ In almost every interference case where diligence is involved, the courts have said that what is reasonable diligence necessarily depends upon the facts in each particular case. Obviously that should be so; and it may be added that it is apparent from many cases that the courts are disposed to treat the first conceiver of an invention with great liberality, because it is desired that the actual inventor may have the reward due him. Nevertheless, the courts cannot by decision assume for an inventor a burden which it was his duty to establish by proof. As has been indicated, the record in this case is voluminous, and many questions were raised by both parties which were not discussed by the board and which we do not feel called upon to discuss since,

238

clearly, Fearon may not prevail without establishing diligence.

For the reasons indicated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.