45 C.C.P.A (Patents).

**Robert Harvey RINES, Appellant,**

v.

**Harry C. MORGAN, Appellee.**

Patent Appeals No. 6304.

United States Court of Customs and Patent Appeals.

Dec. 13, 1957.

Robert H. Rines, Boston, Mass. (David Rines, Boston, Mass., of counsel), for appellant.

Donald J. Simpson, Chicago, Ill. (Charles F. Meroni, Carlton Hill, and Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter in issue in Interference No. 83,544 to the senior party Harry C. Morgan, the appellee here.

The invention in issue relates to a television system in which radio waves reflected from the object to be televised are focused on an antenna array com-

prising a large number of pick-up units of a material such as uranium oxide, the resistance of which varies dependent upon the magnitude of radio frequency energy received. The antenna array is scanned with an electron beam and the resultant signals are rectified and amplified and caused to form a visible image on a cathode ray tube.

The invention in issue is defined by the following counts:

"1. A system comprising means for propogating ultra high-frequency electromagnetic energy modulated with a high-frequency wave of electro-magnetic energy, a receiving antenna array including a plurality of closely spaced conductors, an antenna array load impedance connected to said conductors, means for focusing the point of emanation of the propagated energy on a small portion of said antenna array, means for projecting a narrow beam of electrons against said antenna array, means for causing said beam of electrons to scan said antenna array, means for rectifying the electro-magnetic energy received by said antenna array, circuit means forming a close circuit including said beam of electrons, said antenna conductors, said load impedance and said rectifier means in which electron current flows, amplifier means, means for feeding the rectified component of said electromagnetic energy to said amplifier, and means for utilizing the amplified output of said amplifier.

"2. An electric system having, in combination, an oscilloscope-like member having a mosaic of absorbing-and-rectifying radio-receiving elements and means for producing an electron stream for impinging on the elements, means for focusing radio energy on the mosaic, means for causing the electron stream to scan the elements, means controlled by the radio waves focused on the mosaic for producing varying potentials on the elements of the mosaic, and means controlled by the electron stream, as it scans the elements, for indicating variations in the current of the electron stream."

The application of appellee, Morgan, was filed on February 23, 1944, and that of appellant, Rines, on March 18, 1944, less than one month later. Neither party alleges an actual reduction to practice of the invention in issue and accordingly each is restricted to his filing date for constructive reduction to practice.

The Board of Patent Interferences found that Morgan could be accorded no date of conception prior to December 1, 1943, that being the date on which he first disclosed the use of the rectifier which is required by each of the counts. We find that holding to be correct and, since it is not controverted here by Morgan, it will not be further discussed. We also agree with the further holding of the board, not disputed by Morgan, that the record shows Rines disclosed the invention here involved to his father, a patent attorney, as early as May 1943.

From the foregoing, it follows that Rines was the first to conceive and the last to reduce to practice, and the sole issue is whether he continuously exercised reasonable diligence, beginning just prior to Morgan's entry into the field, in preparing and filing his application here involved. In considering that question we shall assume that Morgan has established conception as of December 1, 1943, as found by the board, although Rines contends that Morgan should be awarded no date of conception prior to his filing date, February 23, 1944.

The record shows that from June 1943 until March 1944, when his application was filed, the party Rines was an officer in the Signal Corps and was stationed in Florida, while his father, who prepared and filed the application, resided in Massachusetts. The father, David Rines, will hereinafter be referred to as the attorney.

Rines testified that in May 1943 he was in doubt as to the practical value of

the invention here in issue, in the form in which he had then conceived it, and accordingly did not take steps to file an application for a patent on it. However, he gave the matter further consideration and, on September 4, 1943, mailed to his attorney a sketch and description (Rines Exhibit 35) of the invention with the notation "Best I can do on Mosaic. We'd better file."

The circumstances surrounding the preparation and filing of the Rines application here involved are summarized in the decision of the Board of Patent Interferences as follows:

"Notwithstanding the heavy work load which he carried as an officer in wartime in the Signal Corps, by October 12, 1942 Rines had evolved a number of ideas as improvements on his basic idea of a means for displaying the image of a distant objective. Some of these ideas were closely related to the subject matter now in issue, and some were more remote. In his letter of October 12, 1943 (not in evidence) Rines sent to his father final drawings on four different systems referred to as (1) Gas display system (2) Condenser iconoscope display (3) wave guide-horn method and (4) original dipole system. (Rines Rec.P. 170–171). The gas display system (1 above) became the subject matter of a patent application filed January 29, 1944, which matured into Patent No. 2,673,343 (R.Ex. 43) and the condenser system (2 above) with modifications became application Ser. No. 519,376, filed January 22, 1944. The record shows (P. 178) that the father was actively preparing patent applications on 2 and 4 as of October 26, 1943. The procedure seems to have been that the father prepared rough drafts and submitted them to Rines who made extensive revisions thereon.

"About October 28, 1943 a rough draft of part of the disclosure of what became application Ser. No. 519,376, was sent to Rines who decided to add thereto a modification showing a wave guide, which is shown in Fig. 2 of said application. The rough draft with this additional material was sent back to the father on November 22, 1943, who on December 2, 1943 prepared another rough draft incorporating the added material.

"By December 23, 1943, Rines had prepared a further addition to the rough draft of Ser. No. 519,376, which additional material incorporates the subject matter of Rines' Exhibits 5 and 35 (R.Rec.P. 194–5) and constitutes a disclosure of the subject matter now in issue. It does not appear that any effort was made to incorporate this subject matter in an application prior to this time, notwithstanding the fact that Rines on September 4, 1943 in Ex. 35 had written his father that 'We'd better file' on this subject matter because, 'aside from Neon Mosaic this is next best'; and had again urged preparation of an application on this subject matter in a letter dated September 30, 1943 (R.Ex. 40), the father decided that the proposed additional material would make the application top heavy so proceeded to prepare a separate application thereon."

Except as hereinafter indicated we find the above summary to be accurate.

Neither the board nor the party Morgan has raised any specific question as to Rines' diligence between December 23, 1943, when it was decided to file a separate application on the invention here involved, and March 18, 1944, when the application was filed. The record shows extensive work on the application by the attorney and correspondence relative to it between him and Rines during that period of less than three months, and we think it is clear that Rines cannot be charged with any lack of diligence after December 23, 1943. Since Morgan did not enter the field until December 1, 1943, the critical period with respect to Rines' diligence is, therefore, less than one month.

As above indicated, Rines and his attorney were engaged during the last three months of 1943 in simultaneously preparing a number of different applications. It was the opinion of the board that Rines made no effort to incorporate the invention here in issue in any application prior to December 1943, that he gave preference to the preparation of applications on later conceived inventions, and hence was not exercising reasonable diligence during the critical period. Fearon v. Krasnow, 36 C.C.P.A., Patents, 785, 172 F.2d 233, was cited in support of that holding. Rines, on the other hand, contends that it was his intention during November and the early part of December 1943 to incorporate the instant invention into his so-called case 2, which was filed January 22, 1944, as application No. 519,376, and that he was proceeding diligently toward that end.

As noted by the board, Rines requested his attorney on September 4, and again on September 30, 1943, to prepare an application covering the subject matter here in issue. The attorney testified, however, that, as of September 30, 1943, he did not consider that he was in possession of all the information needed to prepare such an application.

On October 26, 1943, the attorney wrote a long letter to Rines advising him as to what was being done as to the preparation of some of his patent applications and asking for information as to certain matters. Rines returned the letter with certain notes, one of which was to the effect that the latest case should include "Xtal dipoles," which, Rines stated, was a reference to the combination dipole and crystal disclosed in his application here involved. This indicates that when Rines returned the letter, early in November 1943, he was under the impression that the invention here in issue was to be included in one of the applications then being prepared.

On October 29, 1943, the attorney mailed a draft specification of case 2 to his draftsman with instructions to prepare drawings and, when the drawings were prepared, the draftsman sent them, together with the draft specification, to Rines, who noted some proposed revisions and returned the papers to the attorney on November 22, 1943. The papers did not contain a disclosure of the invention here in issue, and the revisions proposed by Rines did not include such a disclosure. It was not until the papers had been revised and returned to Rines on December 19, 1943, that he prepared a detailed addition to case 2 to incorporate a disclosure of the said invention. That addition was promptly mailed to the attorney and received by him on December 23, 1943. As above indicated, the attorney found it inexpedient to include the additional matter in case 2 and proceeded to prepare and file the separate Rines application involved in the instant interference.

While it might have been well for Rines to have included a detailed disclosure such as that made on December 23, 1943, with the first draft returned by him on November 22, 1943, his failure to do so seems entirely reasonable. The draft had been prepared by the attorney and mailed to the draftsman on October 29, 1943 and, subsequently to that date, Rines had advised the attorney, by means of his notations on the October 26, 1943, letter which he returned to the attorney, as to the disclosure of the crystal dipole. Rines might properly assume, therefore, that such disclosure would be included without further specific directions from him. When it became clear, by the submission of the later draft on December 19, 1943, that this had not been done, Rines promptly took steps to correct the matter.

Under these circumstances, we are of the opinion that Rines cannot properly be charged with any deliberate delay or preferential treatment of other applications on inventions made after the one here in issue. The record shows that twice he definitely requested in September 1943 that an application including the invention in issue be prepared and there is nothing to suggest any change of purpose on his part or any suggestion

that other applications be given precedence. The failure to include the invention in case 2 in November 1943 seems to have been the result of an oversight or a misunderstanding between Rines and the attorney, rather than of any intention to delay preparation of the instant application in order to work on others. Accordingly, Fearon v. Krasnow, supra, is not in point.

The question as to whether an inventor has exercised reasonable diligence is one which must be determined by the particular circumstances of each individual case. As was pointed out in Powell v. Poupitch, 35 C.C.P.A., Patents, 1080, 167 F.2d 514, it is not necessary that an inventor or his attorney should drop all other work and concentrate on the particular invention involved; and if the attorney has a reasonable backlog of work which he takes up in chronological order and carries out expeditiously, that is sufficient.

As above indicated, Rines and his attorney were diligently engaged throughout November and December of 1943 in preparing Rines' case 2, which was filed January 22, 1944, and it appears to have been Rines' intention, up to and including December 23, 1944, to include the invention here in issue in that application. This is indicated by his notation on the October 26, 1943, letter which he returned to his attorney, and also by his taking immediate steps to include the disclosure when he found it had been omitted from the draft of case 2 which he received December 19, 1943.

Moreover, it is to be noted that the Rines' application involved in this interference is closely related to his case 2 and incorporates much of the matter of that case. Accordingly, the work done on case 2 during November and December of 1943 contributed substantially to the ultimate preparation of the involved application. Such work, therefore, may properly be regarded as showing diligence in the preparation and filing of the instant application, even though case 2 did not include a disclosure of all the features of the invention here in issue.

The record shows that throughout the latter part of 1943 and the early part of 1944 Rines and his attorney were engaged in the preparation of four rather complex applications, including the one here in issue. During that period Rines was kept quite busy with his duties in the Signal Corps, and could communicate with his attorney only by mail. Under such circumstances, rapid progress could not be expected.

A voluminous record has been presented which shows beyond question that, considering the group of applications as a whole, Rines and his attorney were working diligently from October 1943 until the application here involved was filed in March 1944. The exact lines of demarcation between the cases were not clear in all respects at the start and it was necessary for the attorney to prepare tentative drafts and submit them to Rines for revision. Naturally it was necessary for the attorney to determine the exact order of procedure in the manner which promised the best over-all results.

We find no evidence that either Rines or his attorney ever laid aside the invention here in issue at any time after September 1943, or that they gave preference to the preparation of an application of any later invention. Considering the circumstances as a whole we are of the opinion that the conduct of Rines and his attorney throughout a period beginning in November 1943 and ending with the filing of the Rines' application on March 18, 1944, shows reasonable diligence in the preparation and filing of his application here involved. Having been the first to conceive the invention in issue and having exercised reasonable diligence in reducing it to practice over the critical period, Rines should have received the award of priority.

The decision of the Board of Patent Interferences is reversed.

Reversed.

JACKSON, J., retired, recalled to participate.