**BEMIS MANUFACTURING Company, Plaintiff–Appellant,**

and

**Eductor Partnership, Plaintiff–Appellant,**

v.

**DORNOCH MEDICAL SYSTEMS, INC., Defendant–Cross Appellant.**

Nos. 00–1585, 01–1007.

United States Court of Appeals, Federal Circuit.

Nov. 2, 2001.

Before MAYER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER. Dissenting-in-part and Concurring-in-part Opinion filed by Circuit Judge NEWMAN.

CLEVENGER, Circuit Judge.

Bemis Manufacturing Company and Eductor Partnership appeal a summary judgment of noninfringement granted in favor of Dornoch Medical Systems, Inc., by the United States District Court for the Eastern District of Wisconsin. *Bemis Mfg. Co. v. Dornoch Med. Sys., Inc.*, No. 98–C–952 (E.D.Wis. Aug. 30, 2000) (*"Bemis"*). Because the district court correctly denied Dornoch's motion for partial sum-

mary judgment based on 35 U.S.C. § 102(g) priority of invention, and because it did not err in concluding that Dornoch failed to prove that Bemis engaged in inequitable conduct, we *affirm* those portions of the district court's decision and order. However, because we conclude that the district court improperly granted summary judgment of noninfringement in favor of Dornoch, and because insufficient findings preclude meaningful review by this court with regard to the issue of invalidity, we *vacate* those portions of the district court's decision and order and *remand* for further proceedings consistent with this opinion.

## I

Bemis Manufacturing Company and Eductor Partnership (collectively, "Bemis") are the holders of four patents-in-suit: U .S. Patents Nos. 5,688,255 ("the '255 patent") and 5,871,476 ("the '476 patent") issued to Joseph M. Hand (collectively,

"the Hand patents"), and U.S. Patents Nos. 5,807,359 ("the '359 patent") and 5,931,822 ("the '822 patent") issued to Peter F. Bemis, *et al.* (collectively, "the Bemis patents"). The Hand patents generally relate to a method and apparatus for removing and disposing of body fluids collected in a suction canister during medical procedures. The Bemis patents similarly relate to a medical suction system that includes a cleaning station, which automatically drains and cleans suction canisters used to collect body fluids.

## A

Suction canisters are used in hospitals and other medical settings to collect blood and other medical waste fluids that have been suctioned from a patient during surgery. Typically, a suction canister contains a vacuum port and a patient port as shown below in Fig. 1, taken from the Hand patents:

When a vacuum source is connected to the vacuum port, medical waste fluids can be suctioned from a patient into the canister through the patient port. As would be expected, such fluids often contain infectious material. The patents-in-suit are directed to methods and devices for disposing of the contents of the suction canister in a manner that minimizes the risk of exposure to personnel. To achieve this safety function, the Hand patents disclose a drainage device 122 that can remove a plug in the drain hole of the canister by way of a movable tool 130 contained within an upwardly tapered drain conduit 126. The canister is placed on the drainage device so that the drain hole protrusion 38 is positioned atop of the drain conduit 126. The drainage device is then operated so that the movable tool slides upward to punch the plug out of the protrusion, thereby allowing the contents of the canister to drain away through the drain conduit 126.

Similarly, the Bemis patents disclose a cleaning station upon which a filled canister 32 is placed. An upper housing 488 containing a hollow probe is automatically lowered down onto the canister so that the probe breaks a seal in the canister lid and enters the canister's chamber. The contents of the canister are then sucked out while cleaning fluids are simultaneously introduced via the probe.

Fig. 16

Dornoch Medical Systems, Inc. ("Dornoch") also sells suction canisters for collecting and disposing of medical waste fluids. Dornoch's canisters are designed to be used with a draining and cleaning station that Dornoch also manufactures and sells under the trademark "red>away™." When the canister is being used during a medical procedure, a rod-and-plug assembly blocks the drain hole in the bottom of the canister, as shown in Fig. 5 of U.S. Patent No. 5,776,-260, a patent owned by Dornoch in which it discloses its red>away™ system:

FIG. 5

When the chamber of the canister 4b is being drained and cleaned, a spray jet nozzle is inserted into the top of the canister, consequently pushing down on the rod portion 12c of the rod-and-plug assembly. This action forces the plug portion 12d of the assembly out of the drain hole, thereby allowing the contents of the canister to be drained away.

B

In September 1998, Bemis brought suit against Dornoch alleging that Dornoch infringed the four patents-in-suit—both literally and under the doctrine of equivalents—by manufacturing, offering for sale, and selling its red>away™ system. In response, Dornoch filed a counterclaim alleging, *inter alia*, that all four patents-in-suit were invalid under 35 U.S.C. §§ 102 and 103, as well as unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("PTO").

In subsequent proceedings, Bemis moved for summary judgment on infringement as a matter of law, arguing that the claims should be given their ordinary meaning. Dornoch opposed Bemis's motion for summary judgment of infringement, arguing that at least part of the claims should be construed by the district court in means-plus-function form pursuant to § 112, ¶ 6. Dornoch also moved for partial summary judgment on the issue of invalidity based on priority pursuant to § 102(g).

On June 29, 2000, two weeks prior to the start of trial, the parties were advised by telephone that the district court intended

to grant summary judgment on Bemis's motion *sua sponte* in favor of Dornoch, on the ground that Dornoch's red>away™ system did not infringe any of the claims asserted. Soon thereafter, Bemis filed a motion requesting a *Markman* hearing and seeking leave to file opposing evidentiary materials and a brief in accordance with Fed.R.Civ.P. 56(c).

On August 30, 2000, without ruling on Bemis's motion, the district court filed its decision and order granting summary judgment in favor of Dornoch on the ground of noninfringement, but denied Dornoch's motion for partial summary judgment on the ground of priority.

## II

Our review of whether a district court properly granted summary judgment is *de novo*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only if there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c).

## A

In its appeal, Bemis argues that it was improper for the district court to grant summary judgment *sua sponte* in favor of Dornoch on the ground of noninfringement because Bemis was not given proper notice nor an adequate opportunity to be heard as to that ground pursuant to Rule 56 of the Federal Rules of Civil Procedure.

■ Whether an opposing party is afforded sufficient notice and opportunity to be heard by a district court granting summary judgment against it presents a procedural question not unique to patent law, and as such, is governed by the law of the regional circuit. *Massey v. Del Laboratories, Inc.*, 118 F.3d 1568, 1572, 43 USPQ2d 1367, 1370 (Fed.Cir.1997); *see also Glaver-*

*bel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562, 33 USPQ2d 1496, 1505 (Fed.Cir.1995) (following Seventh Circuit law and holding that it was error for the district court to grant summary judgment where no properly supported motion was made).

■ As we noted before, "there is nothing inherently improper about [a] district court entering summary judgment for a non-movant." *Massey*, 118 F.3d at 1572, 43 USPQ2d at 1369. In cases where the "factual record has been well developed before the summary judgment stage, the grant of summary judgment to the non-movant may well be the most efficient manner to decide a case." *Id.* But in the Seventh Circuit, before such a summary judgment can be granted, certain procedural due process requirements must be met, as recognized in *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546 (7th Cir.1999):

> [G]ranting summary judgment *sua sponte* warrants special caution. As a general rule, a district court lacks the power to grant summary judgment *sua sponte* unless the party against whom summary judgment was entered had (1) proper notice that the district court was considering entering summary judgment and (2) a fair opportunity to present evidence in opposition to the court's entry of summary judgment.

*Id.*, 171 F.3d at 549 (citations omitted). Hence, "the appropriateness of a district court's grant of summary judgment *sua sponte* turns on proper notice to the adverse party and a fair opportunity to be heard." *Id.*

■ In the present case, Bemis moved for summary judgment on the ground that under Bemis's proposed claim construction, Dornoch's products infringed the four patents-in-suit as a matter of law. In op-

position to Bemis's motion for summary judgment, Dornoch argued that under its own proposed claim construction, its accused product would not infringe. However, Dornoch never moved itself for summary judgment of noninfringement, but rather moved for partial summary judgment on the sole issue of invalidity based on priority pursuant to § 102(g). Bemis contends that since Dornoch moved for partial summary judgment only on the ground of § 102(g) priority, Bemis was never properly placed on notice that the district court was considering granting summary judgment against it on the ground of noninfringement.

In *Massey*, we faced a situation similar to the one present in this case. In that case, the parties filed cross-motions for summary judgment. The plaintiff, as in the instant case, moved for summary judgment of infringement as well as a determination that the patent was not invalid. In its opposition brief, the defendant asserted as an affirmative defense that the plaintiff's patent was both anticipated and obvious in light of the prior art. But in its own cross-motion for summary judgment, the defendant argued that the plaintiff's patent was invalid solely on the ground of anticipation. Ultimately, the district court granted the defendant's motion for summary judgment, but not on the ground of anticipation. Instead, it held that the plaintiff's patent was obvious in light of the prior art (drawing from the defendant's arguments in its opposition brief written in response to the plaintiff's motion). On appeal, we held that the separate summary judgment motions did not conclusively show that the plaintiff received a "full and fair opportunity to ventilate the issues on which the district court granted judgment." *Massey*, 118 F.3d at 1573, 43 USPQ2d at 1370.

Like the defendant's motion in *Massey*, Dornoch's motion for partial summary judgment rests on a different ground (*i.e.*, priority) than that which Dornoch presented in its opposition to Bemis's motion (*i.e.*, noninfringement). Also similar to *Massey*, the district court granted summary judgment in favor of the defendant on grounds argued in the defendant's opposition brief, rather than in the defendant's motion for summary judgment. Although it may be true that the noninfringement issue was certain to be raised sometime during the course of the proceeding (having been asserted in Dornoch's counterclaim), the determination of whether the district court offered Bemis proper notice and a fair opportunity to be heard turns not on Bemis's surprise that the issue was raised, but more so on Bemis's surprise that the district court would consider granting summary judgment on that ground. *See Massey*, 118 F.3d at 1573, 43 USPQ2d at 1371. Therefore, similar to our outcome in *Massey*, we conclude here that Bemis was not afforded proper notice and a fair opportunity to be heard concerning the ground on which the district court granted summary judgment, *i.e.*, the issue of noninfringement.

■ Dornoch's sole argument in support of the district court's grant of summary judgment is that "the district court had before it the express statements of Bemis that all of the necessary evidence was of record and that there was no material factual dispute." As we explained in *Massey*, "[t]he parties' agreement that no material facts remain in dispute, although not dispositive, is one factor in determining whether a grant of summary judgment to a non-movant is appropriate." *Id.*, 118 F.3d at 1573, 43 USPQ2d at 1370. However, it is important to note that "the summary judgment motions of each party may focus on different legal principles and posit

as undisputed different sets of facts." *Id.* Here, the parties do not agree on a common claim construction or a common set of undisputed material facts. Each party argued the facts as necessary under its own particular claim construction. As such, this case does not present a situation, contrary to Dornoch's suggestion, where a court can simply agree or disagree with Bemis's application of law to facts.

Because the district court granted summary judgment *sua sponte* to a non-movant on a ground for which proper notice and a fair opportunity to present evidence was not given, we must vacate the district court's grant of summary judgment on the ground of noninfringement in favor of Dornoch.

#### B

With regard to the district court's determination that the four patents-in-suit are not invalid on either grounds of anticipation or obviousness, we first note that although the technology at issue is relatively simple, the case itself is enormously complex, involving four patents from which 37 claims have been asserted.

■ Although Rule 52(a) of the Federal Rules of Civil Procedure does not require "elaborate, detailed findings on every factual issue raised, it does require that the findings of the trial court include as many of the subsidiary facts as are necessary to disclose to the appellate court the steps by which the trial court determined factual issues and reached its ultimate conclusions." *Atlantic Thermoplastics Co. v. Faytex Corp.,* 5 F.3d 1477, 1479, 28 USPQ2d 1343, 1345 (Fed.Cir.1993). One of the purposes of Rule 52(a) is to "provide the appellate court with an adequate basis for review." *Gechter v. Davidson,* 116 F.3d 1454, 1458, 43 USPQ2d 1030, 1033 (Fed.Cir.1997); *see also Pretty Punch Shoppettes, Inc. v. Hauk,* 844 F.2d 782, 784, 6 USPQ2d 1563, 1565 (Fed.Cir.1988) ("[T]he trial court must provide sufficient factual findings such that we may meaningfully review the merits of its order.").

■ In the present case, the district court summarily concluded that the '255 patent was not invalid due to anticipation and/or obviousness. *Bemis,* slip op. at 19. The district court made no findings to support its conclusion as to the lack of anticipation, and its analysis in relation to obviousness relied solely on the failure of a PTO examiner to demonstrate a motivation to combine in rejecting an unrelated patent application containing claims drafted identically to those at issue in the '255 patent. *Id.,* slip op. at 20. With respect to the '476 patent, the district court's analysis was limited to its notation that the prior art upon which Dornoch sought to mount its invalidity challenge had been cited in the '476 patent as relevant prior art. *Id.* Finally, with respect to the remaining patents, the district court found in conclusory terms that nothing in the prior art "suggests the desirability, and thus the obviousness of the relevant patents." *Id.* Because insufficient findings preclude meaningful review by this court, we must vacate the district court's determination that the four patents-in-suit are not invalid.

#### C

■ In regard to the district court's denial of Dornoch's motion for partial summary judgment claiming priority of invention under § 102(g), we conclude that the district court did not err in finding that the inventor's work on an initial "breakaway" embodiment of the invention "constitutes reasonable diligence toward the 'plug' alternate embodiment under 35 U.S.C. § 102(g)." *Bemis,* slip op. at 25. We have held before that "work on [a] related case is to be credited toward reasonable dili-

gence if the work on the related case 'contribute[s] substantially to the ultimate preparation of the involved application.'" *Bey v. Kollonitsch,* 806 F.2d 1024, 1029, 231 USPQ 967, 970 (Fed.Cir.1986) (quoting *Rines v. Morgan,* 250 F.2d 365, 369, 116 USPQ 145, 148, 45 C.C.P.A. 743, (alteration in original)). Here, the inventor's work was not merely work on a related case, but on a related embodiment of the same invention in the same patent. As such, the district court correctly denied Dornoch's motion for partial summary judgment based on § 102(g) priority of invention.

D

With respect to the district court's conclusion that Dornoch has not shown that Bemis engaged in inequitable conduct before the PTO, we have considered Dornoch's arguments and have reviewed the record but are not persuaded that the district court committed clear error in its determination that the prior art references Bemis failed to cite are cumulative. We therefore affirm the district court's denial of summary judgment to Dornoch based on its counterclaim argument. However, we note that our conclusion here should not be somehow construed to render these prior art references irrelevant for future purposes of determining the validity of the asserted claims.

III

Based on the foregoing conclusions, we vacate the district court's grant of summary judgment of noninfringement in favor of Dornoch, as well as its determinations related to validity, and remand the issues for further proceedings. We affirm the district court's denial of Dornoch's motion for partial summary judgment based on § 102(g) priority of invention and the district court's conclusion with respect to Dornoch's inequitable conduct counterclaim.

COSTS

Each party bears its own costs related to this appeal.

NEWMAN, Circuit Judge, concurring in part, dissenting in part.

I agree with the court's conclusion that the summary judgment of non-infringement was not warranted, for there was not adequate opportunity for the plaintiff to present evidence of disputed facts. I also agree that inequitable conduct was not shown, for the additional references are cumulative to the references that were before the examiner.

I write for I do not share my colleagues' criticism of the terseness of the district court's opinion on the issues of patent validity and am concerned with our lack of guidance on remand. I also believe that we are remiss in declining to review the construction of the claims on this appeal.

1.

The panel majority criticizes the absence of detail in the district court's analysis of Dornoch's invalidity defenses. While the district court's analysis was brief, it relied on the elaborate record that had been developed in the Patent and Trademark Office in connection with Dornoch's attempted interference involving the inventions in suit, a record that was fully before the district court. Although my colleagues fault the court for relying on this record, they offer no guidance as to why that reasoning was deficient, thus providing an appellate opinion that is even sketchier than the opinion it criticizes.

As the panel did not reach the merits of the invalidity issues, I do not reach them here. However, the issues of anticipation and obviousness had been heavily explored by the examiner in the course of Dornoch's attempts to provoke an interference. This record went far beyond routine examination, and explored at length the same is-

sues that were raised before the district court. Our authority, as well as obligation, is to give plenary review of the grant of summary judgment. Thus, if my colleagues believe that the district court erred in relying on the patent examiner's analysis of why the inventions were not the same, we should explain where the error arose.

As for the question of obviousness, a matter of law based on underlying facts, the district court pointed out a pervasive legal flaw in the defense: that the defendant cited no teaching, suggestion, or motivation for combining the teachings of the cited references. For example, for the '255 patent the district court stated that there was no showing of a motivation to combine references; such a showing is essential to a ruling of invalidity based on obviousness. Absent at least a proffer of such evidence by the defendant, invalidity on this ground could not be established. No more than a sentence or two to this effect is ordinarily needed on this aspect; if more is required in this case, we should identify what it is.

For the '476 patent, the district court observed that the same references that were cited to the court had also been before the patent examiner. The court did not provide an in-depth explanation of its decision to sustain the remaining patents, relying on the rulings of the patent examiner. However, in faulting this analysis, the panel majority does not mention that Dornoch had tried vigorously and unsuccessfully to provoke an interference in the PTO on the grounds that the inventions were the same or obvious variants of the same references, the same arguments that it now raises. Thus the district court did not merely rely on the presumption of validity, as the majority hints; instead there was an extensive administrative proceeding on the very issues that Dornoch now raises.

The parties briefed the validity aspects in extensive detail, providing a full basis for appellate review. I must, respectfully, dissent from the panel's failure to provide such review.

2.

The claim construction was decided by the district court, with a full opinion. Both parties raise questions and challenges to various aspects thereof. The panel majority declines to "reach the district court's claim construction." However, when claim construction has been decided by the trial court and duly appealed, our obligation is to review the decision, and decide the claim construction, *de novo*. Our appellate treatment is particularly flawed because the district court proceeded in accordance with a incorrect view of § 112 ¶ 6, presenting an opinion that may defeat finality of this litigation on remand, to the disadvantage of the parties as well as the judicial process.