K&K JUMP START/CHARGERS, INC., and Bonnet Enterprises, LLC, Plaintiffs–Appellees,

v.

SCHUMACHER ELECTRIC CORP., Defendant–Appellant.

No. 02–1163.

United States Court of Appeals, Federal Circuit.

DECIDED: Nov. 25, 2002.

Rehearing and Rehearing En Banc Denied Jan. 16, 2003.

Before CLEVENGER, Circuit Judge, ARCHER, Senior Circuit Judge, and BRYSON, Circuit Judge.

CLEVENGER, Circuit Judge.

In this action for patent infringement, plaintiffs K&K Jump Start/Chargers, Inc., and Bonnet Enterprises (collectively "K&K") sued defendant Schumacher Electric Corporation ("Schumacher") for infringement of U.S. Patent No. 5,183,407 ("the '407 patent"). Schumacher asserted that the patent was invalid under 35 U.S.C. § 102(g) because of a prior invention and that its products did not infringe the claims.

The United States District Court for the Western District of Missouri entered judgment upon a jury verdict in favor of K&K, denying Schumacher's motions for judgment as a matter of law or a new trial. *K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, No. 98–0905–CV–W–6 (W.D.Mo. Nov. 13, 2001). Schumacher appeals the decision to this court, alleging errors on the issues of reduction to practice, diligence, claim construction, and damages. We *affirm-in-part, reverse-in-part,* and *remand.*

I

The '407 patent, entitled "Reusable Safety Cap for Booster Cables," discloses a cap that fits over the metal jaw portion of a booster cable clamp. The cap has a partition inside, such that when the cap is placed over the clamp, the clamp grasps the partition and secures the cap in place. '407 patent, col. 1, lines 19–26. This invention is advantageous because it allows booster cables to be used in a safer manner. When one clamp of a booster cable is attached to a battery, the other clamp contains live current. The safety cap prevents the two metal clamps from having contact with each other and creating a hazard to the user. *Id.* at col. 1, lines 10–13. Claim 1 is the only claim at issue, and reads as follows:

A reusable safety cap for exposed unprotected booster cable clamps having spring actuated clamping jaws, comprising:

a cap shell with an internal gripping tab such that when the clamp is inserted into the cap shell the internal gripping tab is gripped by the spring actuated clamping jaws to maintain the clamp within the cap shell.

*Id.* at col. 2, lines 29–36.

K&K, a company that manufactures jump starters, acquired the rights to the '407 patent in 1995 and started selling its jump starters with the patented clamp

covers attached. K&K makes most of its sales to professionals such as repair shops, but it has also entered into agreements with other companies to sell its jump starters to retail establishments such as Wal–Mart and automotive parts stores.

Appellant Schumacher is also in the automotive business, mainly manufacturing battery chargers. In 1996, K&K entered into an agreement with Schumacher whereby Schumacher would market K&K's safety cap-equipped jump starters to retail establishments. This arrangement lasted from mid–1996 to mid–1997. In 1997, K&K entered into a one-year agreement with Prestone whereby K&K would sell its jump starters exclusively to Prestone and Prestone would then sell them to retailers and consumers. K&K notified Schumacher of the agreement with Prestone and informed Schumacher that K&K would no longer be able to supply it with jump starters. In the letter notifying Schumacher of the change, K&K suggested that Schumacher find another supplier to manufacture a similar product, which it did.

Schumacher's products, known as the PS–400–1, and PS–400–2, were rechargeable batteries encased in a plastic housing, with cables extending out through openings in the sides of the housing. Attached to the sides of the housing were "holsters" containing metal rods. When the device was not in use, the clamps at the ends of the cables could be stored in the holsters, attaching to the metal rods for secure storage.

During the time period in which K&K was entering into its license agreements, the jump starter industry became embroiled in patent litigation. In February 1997, Century Manufacturing ("Century"), another competitor, sued K&K for infringement of its patent on jump starter "holsters," which covered booster cable clamps in a manner similar to K&K's safety caps. K&K counterclaimed, alleging that Century's products infringed the '407 patent. The litigation settled in October 1997 with a cross-licensing arrangement under which K&K agreed to grant Century a royalty-free license to practice the '407 patent, Century agreed to license its patent to K&K for a royalty rate of $3.40 for each jump starter containing a holster, and Century agreed to mark its products with the '407 patent number.

After its litigation against K&K, Century also sued Schumacher for infringement of its patent. Schumacher entered into a settlement agreement with Century in late 1998 and also modified its products by removing the holsters so the products would no longer infringe.

Finally, K&K sued Schumacher for infringement of the '407 patent in October 1998. K&K's president had seen the Schumacher products utilizing the holster design at a 1997 trade show but, prior to filing suit, never notified Schumacher that the products might infringe the '407 patent. In K&K's suit against Schumacher, K&K alleged willful infringement of claim 1 of the '407 patent. One of Schumacher's main defenses was that the '407 patent was invalid under 35 U.S.C. § 102(g) because of the prior invention disclosed in U.S. Patent No. 5,166,478 ("the '478 patent"). The parties do not appear to be disputing that the invention described in the '478 patent, issued to Kerry Sprouse, would invalidate the '407 patent if it was entitled to priority, and therefore the issue of priority was heavily litigated. The section 102(g) invalidity issue turned on whether the '407 patent was entitled to its foreign priority date of May 6, 1991, whether Sprouse had actually reduced the invention of the '478 patent to practice before the priority date of the '407 patent, and whether Sprouse had been diligent from just

before the priority date of the '407 patent until his own filing date.

The case was tried to a jury in 2000, and, after the district court found infringement as a matter of law, the jury found for K&K on the remaining issues and awarded damages totaling $357,904.40. Upon Schumacher's post-trial motions, the district court reversed the jury and granted judgment as a matter of law ("JMOL") that the '407 patent was not entitled to its foreign priority date and thus was invalidated by the prior invention disclosed in the '478 patent. K&K *Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, No. 98–0905CVW6 (W.D. Mo. June 7, 2000).

K&K appealed the district court's decision to this court, and we reversed the grant of JMOL, concluding that the '407 patent was entitled to its foreign priority date. K&K *Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, Nos. 00–1479, 00–1480, 13 Fed.Appx. 982, 2001 WL 688285 (Fed. Cir. June 19, 2001). On remand, the district court entered judgment in accordance with the jury verdict, denying Schumacher's motions for JMOL or a new trial. K&K *Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, No. 98–0905–CV–W–6 (W.D.Mo. Nov. 13, 2001). Schumacher now appeals the denial of JMOL or a new trial to this court.

II

"This court reviews a denial of JMOL following a jury verdict by reapplying the district court's standard of review." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1300, 64 USPQ2d 1270, 1273 (Fed.Cir.2002). To prevail on appeal, the party against whom the jury decided "must prove that the jury's factual findings were not supported by substantial evidence or that the facts were not sufficient to support the conclusions necessarily drawn by the jury on the way to its ver-

dict." *Applied Med. Res. Corp. v. United States Surgical Corp.*, 147 F.3d 1374, 1376, 47 USPQ2d 1289, 1290 (Fed.Cir.1998), *quoted in Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1357, 52 USPQ2d 1294, 1296 (Fed.Cir.1999).

Priority—Reduction to Practice
and Diligence

Schumacher's first two allegations of error concern the relative priority of the '407 patent and the '478 patent. Schumacher had argued at trial that the '407 patent was invalid under section 102(g) by the invention disclosed in the '478 patent. A party seeking to show that a patent is invalid must do so by clear and convincing evidence. *Oney v. Ratliff*, 182 F.3d 893, 895, 51 USPQ2d 1697, 1699 (Fed.Cir.1999). When two parties are both asserting that they were the first inventor of a particular device, "priority of invention 'goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.'" *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577, 38 USPQ2d 1288, 1290 (Fed. Cir.1996) (quoting *Price v. Symsek*, 988 F.2d 1187, 1190, 26 USPQ2d 1031, 1033 (Fed.Cir.1993)); *see also* 35 U.S.C. § 102(g) (2000). Conception and reduction to practice are both questions of law based on underlying facts. *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365, 57 USPQ2d 1647, 1651 (Fed. Cir.2001).

Schumacher argues that the '407 patent is invalid because Kerry Sprouse, the inventor of the device covered by the '478 patent, was the first inventor of the subject matter claimed in the '407 patent. According to Schumacher, Sprouse was the first to reduce the invention to practice, or, in the alternative, was the first to

conceive of the invention and exercised reasonable diligence in reducing it to practice from a time prior to the '407 patent's filing date until his own filing date. The jury found in K&K's favor on both of these issues.

Actual reduction to practice requires a showing by the inventor that "the invention is suitable for its intended purpose," which may require actual testing for a complicated invention or may require only the complete construction of a prototype for a simple invention with obvious purpose and workability. *Mahurkar*, 79 F.3d at 1578, 38 USPQ2d at 1291. For an inventor to establish by testimony that he actually reduced his invention to practice, his testimony must be corroborated by independent evidence, which is evaluated under a rule of reason considering all the evidence. *Loral Fairchild Corp. v. Matsushita Elec. Indus. Corp. Ltd.*, 266 F.3d 1358, 1363, 60 USPQ2d 1361, 1365 (Fed. Cir.2001).

■ The jury found that Schumacher had failed to prove by clear and convincing evidence that Sprouse had actually reduced his invention to practice before the priority date of the '407 patent. This conclusion is supported by substantial evidence in the record. Schumacher did not provide physical evidence that Sprouse ever built a prototype of the invention that was shown to work for its intended purpose, but rather attempted to prove reduction to practice through the testimony of Sprouse, his wife, and his patent attorney. The jury was not required to accept this testimony as credible, especially in light of the inconsistencies in the testimony. As an example, Sprouse's attorney testified that Sprouse had brought a prototype of the invention to one of their meetings, while Sprouse testified that he did not think he had ever shown a prototype to his attorney. We find that the district court did not err in denying JMOL on the issue of actual reduction to practice.

As an alternative to the actual reduction to practice argument, Schumacher argues that the '478 patent has priority over the '407 patent because Sprouse was the first to conceive of the invention and exercised reasonable diligence in reducing the invention to practice. The jury also found that Schumacher had failed to prove Sprouse's diligence by clear and convincing evidence. Schumacher first takes issue with the jury instruction on diligence, which suggested that any lapse of time, "no matter how short," would allow for a finding of lack of diligence. However, the instruction read as a whole is a correct statement of the law. It stated that the jury may, not must, find a lack of diligence under all the circumstances if there was an unaccounted for lapse in activity, "no matter how short." It emphasized that the jury was permitted to consider all the circumstances, stating that "[r]easonable diligence exists when there is a continuous course of activity, carried on without *significant* interruption and accomplished in a *reasonably* prompt manner, considered in light of *all the attendant circumstances*" (emphases added). This instruction gave the jury a proper statement of the law of diligence.

The relevant time period for diligence in this case is from a time just before May 6, 1991, the priority date of the '407 patent, until June 10, 1991, the filing date of the '478 patent. The party alleging prior invention must be able to show diligence throughout the entire critical period. *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369, 59 USPQ2d 1930, 1938 (Fed.Cir.2001). Here, we have evidence that Sprouse's attorney sent him a draft of the patent application on April 26, 1991. The attorney testified that he received a letter from Sprouse on May 22,

1991, suggesting various marketing points for the invention, but the letter is not actually dated. The jury was entitled to find that the testimony regarding the date of the letter was not credible. Sprouse alleged that he spoke with his attorney by telephone several times throughout the critical period to discuss possible changes for the application, but there are no records of the calls, and Sprouse was unable to give a date or time estimate. The next documented evidence of diligence did not take place until May 28, 1991, when Sprouse's attorney sent him a revised version of the application. Sprouse signed the application on May 30 and returned it to his attorney, who sent the application to the PTO on June 6, 1991, where it was filed on June 10, 1991.

While we recognize that it is not necessary that every minute of every day during the critical period be accounted for and that the inventor and his attorney do not need to neglect all their other work to focus solely on the invention, *see Rines v. Morgan*, 45 C.C.P.A. 743, 250 F.2d 365, 369, 116 USPQ 145, 148 (1957), here there are very few specific details about what occurred during the critical period. We cannot say that the evidence in the record was insufficient as a matter of law to support the jury's verdict that Schumacher had failed to show Sprouse's diligence by clear and convincing evidence.

### Infringement—Claim Construction

Schumacher's next allegation of error lies in the district court's grant of JMOL that the Schumacher products infringed the '407 patent. The heart of this argument is a challenge to the district court's claim construction, with Schumacher arguing that the district court should have limited the claim at issue to the embodiment shown in the drawings and that the preamble should be construed as a limitation on the claim.

Claim construction is a question of law that we review without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir. 1998). The district court rejected the argument that claim 1 should be limited to its preferred embodiment and concluded that "no construction of Claim 1 is required, other than the claim itself and an instruction that the jury give its words their ordinary and customary meaning." While we think that more than this is required for a proper claim construction, we agree that the claim is not limited to the preferred embodiment. Our precedent contains no rule mandating that when there is only one embodiment disclosed in the specification, claim terms are limited to that single embodiment. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326–27, 63 USPQ2d 1374, 1381–82 (Fed.Cir. 2002).

On the issue of claim construction, a careful reading of claim 1 of the '407 patent reveals that the only two elements positively claimed by the patentee are the cap shell and gripping tab. Schumacher is not contending that its products do not contain these elements. Rather, Schumacher argues that the booster cable clamps in its products are not "exposed" and "unprotected." The terms "exposed" and "unprotected" appear in the preamble of claim 1, and we conclude that these terms do not serve as limitations on the claim. A preamble only "limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808, 62 USPQ2d 1781, 1784 (Fed.Cir.2002) (quoting *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165

(Fed.Cir.1999)). However, the preamble is not limiting if the rest of the claim describes the complete structure of the invention and the preamble simply serves to set out the invention's purpose or intended use. *Id.* Here, the preamble is not a limitation because it only describes the intended use of the invention; the structure is fully described in the remainder of the claim. Therefore, the district court did not err in finding infringement as a matter of law, since the accused products clearly contain a cap shell and gripping tab.

## Marking

Schumacher next argues that the district court erred in failing to grant JMOL that K&K was only entitled to damages from after the date the suit was filed because of K&K's failure to comply with the marking requirements of 35 U.S.C. § 287(a). Under section 287(a), a patentee or other party selling a patented product under the patent must mark that product as patented in order to give the public notice. If the patentee fails to comply, he may only recover damages for the period after the infringer was actually notified of the infringement. 35 U.S.C. § 287(a) (2000). A patentee's licensees also must mark products with the patent number, and "[w]hen the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111–12, 39 USPQ2d 1001, 1010 (Fed.Cir. 1996). The patentee bears the burden to prove compliance with the marking statute. *Id.* at 1112–13, 86 F.3d 1098, 39 USPQ2d at 1010. Compliance with the marking statute is a question of fact. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339, 59 USPQ2d 1290, 1293 (Fed.Cir.2001) (citing *Maxwell*, 86 F.3d at 1111, 39 USPQ2d at 1010).

Here, K&K licensed Century to practice the '407 patent, and Century agreed to mark any products made under the '407 patent with the patent number. Although there was a provision in the contract between K&K and Century requiring marking, K&K took no steps to determine if Century was actually marking the products until after the start of the current litigation. After Schumacher suggested that Century may not be marking the products, K&K sent letters to Century inquiring about whether the products were being marked. Century's response did little to ease the concern over the possible lack of marking, informing K&K that after the agreement was finalized there was a delay in getting products marked with the patent number into the marketplace but that the products were now being appropriately marked after the lawsuit was filed. This certainly gives no indication that any marking was being done prior to the commencement of litigation; rather, it suggests that marking was not being properly done. Furthermore, K&K brought no evidence to trial of products in the market that had been marked with the patent number.

Under these circumstances, we conclude that the district court should have granted JMOL in Schumacher's favor that K&K had failed to comply with the marking requirements. We do not hold that bare evidence of a contractual provision requiring marking can never constitute reasonable efforts by the patentee to ensure that a licensee is marking the products properly, but under the circumstances here the jury's conclusion that K&K has met its burden to show compliance is not supported by substantial evidence.

## Damages

Since we reverse on the issue of marking, K&K is only entitled to damages ac-

cruing from the date that Schumacher was notified of the infringement. K&K did not put Schumacher on notice of possible infringement until filing suit. At oral argument, counsel for K&K expressed uncertainty as to whether any infringement occurred after the date the suit was filed and thus whether K&K will be entitled to any damages. We remand to the district court for a determination of whether any activity giving rise to damages occurred after K&K filed its infringement action against Schumacher. In light of our disposition of the case, we decline to address the parties' various arguments concerning damages.

## III

We conclude that there was substantial evidence to support the jury's verdict on the priority issues of reduction to practice and diligence, and therefore the district court did not err in declining to grant JMOL. The district court was also correct in finding the '407 patent infringed as a matter of law. However, the district court erred in failing to grant JMOL that K&K failed to meet its burden to show compliance with the marking statute. Because K&K did not show compliance with the marking requirement, the damages awarded by the jury are inappropriate, as they cover a time period before which K&K is entitled to recover damages. We therefore affirm-in-part, reverse-in-part, and remand.

### COSTS

No costs.